CISCO

November 14, 2025

Amina M. Mack, Esq.
The Mack Law Firm
4242 Six Forks Road Ste. 1550
Raleigh, NC 27609
legal@themacklaw.com

**Re:** ***Criselda Angela Monteza (a/k/a Criselda Angela Bell) – Confidential Settlement Communication under Rule 408 of the Federal Rules of Evidence, and/or any other similar rule of evidence.***

Dear Attorney Mack:

This letter constitutes Cisco Systems Inc.'s ("Cisco") response to your correspondence, in which your client, former Cisco employee Criselda Angela Bell, alleges that Cisco discriminated against her.

## I. Company Background & Culture

Cisco is an equal opportunity employer and does not discriminate against any applicant or employee on the bases of age, ancestry, color, citizenship, gender, gender expression, gender identity, gender information, marital status, medical condition, national origin, physical or mental disability, pregnancy, race, religion, caste, sexual orientation, veteran status, or any other basis protected by law.

Cisco promotes a respectful workplace free from unlawful harassment or discrimination and is committed to providing a diverse and inclusive work environment where all employees can maximize their performance. Cisco does not tolerate any type of harassment or discrimination of any person, candidate, or employee based on all categories protected by law. All Cisco employees are encouraged and provided avenues to raise concerns related to any incidents of alleged discriminatory and/or harassing behavior without fear of reprisal or retaliation.

Cisco has a long-established Conscious Culture where the Company strives to create an inclusive culture that is welcoming, positive, creative, and rewarding – an environment that promotes individual and team expression, innovation, and achievement. Cisco is passionate about preserving its positive culture and ensuring that each individual is treated with respect, fairness, and dignity as a valued member of the Cisco team. Despite Cisco's multiple avenues for reporting concerns, Ms. Bell did not raise concerns prior to the elimination of her role for legitimate business reasons.

Cisco Systems, Inc.
170 West Tasman Drive
San Jose, CA 95134-1706

Phone: 408 526-4000
Fax: 408 526-4100
www.cisco.com



Cisco Confidential

CISCO

## II. Ms. Bell's Employment

### A. Background and Role Elimination

Ms. Bell was hired by Lucy Shepard on March 29, 2022 as a Grade 9 Project Manager. In 2024, Ms. Bell's title changed to Business Development Manager and she remained in that role until her employment ended on September 10, 2025. A year earlier, on or about September 15, 2024, Cisco announced restructuring efforts across the Company that would impact approximately 7% of the entire workforce globally. The restructuring was based on business priorities and customers' needs to ensure Cisco was investing for future growth and unlocking new opportunities while remaining financially disciplined. This required balancing Cisco's investments, proactively managing team sizes, and decreasing operating expenses and investment in some areas to invest in others. Impacted employees came from every level, including executives, managers, and individual contributors. Employees impacted by this restructuring were notified beginning in September 2024.

Ms. Bell, along with the majority of employees impacted by the September 2024 restructuring, were notified on September 16, 2024. Ms. Bell, her manager Ms. Shepard, and Ms. Shepard's manager, Sara Starr, were all impacted by the restructuring. Ms. Bell mistakenly alleges that she was the only Business Development (BDM) manager that was impacted by the restructuring activity. Rather, there were at least three other BDM roles within the Customer Experience (CX) Global Renewals and Growth organization, including two on Ms. Starr's team, that were eliminated as part of the same restructuring activity as Ms. Bell. All three of the other impacted BDMs were White Males ranging in age from 34 – 67. The roles held by Ms. Starr, Ms. Shepard, and Ms. Bell were eliminated from the Customer Experience (CX) Global Renewals and Growth organization as a result of the organization discontinuing the Play for Points Renewal program. The decision to eliminate the program and these roles was made by Vice-President John Struempf. Mr. Struempf, who leads a large, global organization within the CX Global Renewals and Growth organization, did not know Ms. Bell and, therefore, had no knowledge of Ms. Bell's fertility journey or pregnancy. Ms. Starr and Ms. Shepard were not involved in the restructuring decision-making as their roles were eliminated as well. Ms. Bell's allegation that the restructuring decision was discriminatory in any way is completely untrue. As shown above, Cisco had strong, legitimate business reasons for eliminating these roles.

### B. Cisco Did Not Discriminate Against Ms. Bell Because of Her Pregnancy or Alleged Infertility.

Ms. Bell's claims that Cisco discriminated against her or somehow denied her access to leave is baseless. Cisco granted Ms. Bell various leaves of absence beginning on September 30, 2024 and continued through July 23, 2025. Ms. Bell took the following leaves:

Cisco Systems, Inc.
170 West Tasman Drive
San Jose, CA 95134-1706

Phone: 408 526-4000
Fax: 408 526-4100
www.cisco.com



Cisco Confidential

CISCO

| *Leave Period* | *Type of Leave* |
|---|---|
| Sept. 30, 2024 – Dec. 20, 2024 | Family Medical Leave |
| Dec. 21, 2024 – Feb. 5, 2025 | Medical Leave |
| Feb. 6, 2025 – Apr. 2, 2025 | Pregnancy/Childbirth Disability Leave |
| Apr. 3, 2025 – July 23, 2025 | Child Bonding Leave |

In total, Ms. Bell took *over 42 consecutive weeks (or close to 10 months)* of leave following her notification of her layoff.

Cisco provides Pregnancy/Childbirth Disability Leave for up to 17.3 weeks for pregnancy- and/or childbirth-related medical reasons. The actual length of an employee's leave depends on the period during which they are disabled as indicated by their treating physician. This leave may begin prior to the date of expected delivery if the physician indicates a qualified disability and may continue while disabled through the return to work six or eight weeks postpartum, depending on the mode of delivery (six weeks for vaginal birth or 8 weeks for C-section). Following Pregnancy/Childbirth Disability Leave, employees are eligible to take up to 16 weeks of Child Bonding Leave within the first 12 months from date of birth if the child was born on or after January 1, 2025. For children born prior to January 1, 2025, employees were eligible for 13 weeks of Child Bonding Leave as a main caregiver.

Ms. Bell was permitted to take advantage of every leave available to her, amounting to approximately 10 months of total leave, including Pregnancy/Childbirth Disability (8 weeks) and Child Bonding (16 weeks) leaves from February 2025 – July 2025. On March 19, 2025, Ms. Bell informed Cisco's leave vendor, Sedgwick, that she would be taking her Child Bonding leave "immediately after [her] maternity leave ends on April 2." As a result, Sedgwick set up Ms. Bell's claim for Child Bonding leave to begin on April 3, 2025. Ms. Bell informed Sedgwick that she would be taking the full 16 weeks, which she did, and thanked Sedgwick for "arranging this". Ms. Bell received disability payments during her medical-related leaves, including $48,757 during her Pregnancy/Childbirth Disability and Child Bonding (maternity) leaves.

Your letter references Ms. Bell being denied "paid maternity leave due to the timing of her due date." Cisco is unaware of what "paid maternity leave" Ms. Bell was allegedly denied.[1] As noted above, Ms. Bell took 8 weeks of Childbirth/Pregnancy Disability Leave (with no indication or request to extend this leave beyond the 8 weeks), requested to take Child Bonding leave after the end of her Pregnancy/Childbirth Disability Leave in April 2025, and proceeded to take her full 16 weeks of Child Bonding Leave. Ms. Bell received disability payments during her medical-related leaves, including (REDACTED AMOUNT) during her Pregnancy/Childbirth Disability and Child Bonding (maternity) leaves.[2] Ms. Bell's allegations are without merit.

[1] All leave and benefit eligibility is determined by Cisco's third-party vendor, Sedgwick. Cisco does not consult with or direct Sedgwick's decisions regarding leave eligibility.

[2] Ms. Bell has attempted to compare her leave of absence to another employee, (Comparator Employee). (Comparator Employee) was also granted leaves of absence after being notified that her role was eliminated in the restructuring. As (Comparator Employee) lives in New Jersey, she was eligible for 4 additional weeks of pregnancy leave under New Jersey law. Following her pregnancy leave, (Comparator Employee) was eligible for 13 weeks of Child Bonding leave based on Cisco's policy prior to January 2025. This was less than the 16 weeks of Child Bonding leave that Ms. Bell received. (Comparator Employee) 's employment ended on April 25, 2025.

Cisco Systems, Inc.
170 West Tasman Drive
San Jose, CA 95134-1706

Phone: 408 526-4000
Fax: 408 526-4100
www.cisco.com



Cisco Confidential

## III. Conclusion

Ms. Bell has not been discriminated against based on her age, race, pregnancy, or on any other legally protected basis. To the contrary, Cisco has been nothing but supportive of her during her tenure, including after she was notified of the elimination of her role. Ms. Bell is subject to an arbitration agreement (attached) and Cisco is prepared to actively and vigorously defend this action in any forum. However, if Ms. Bell would like additional time to reconsider the severance package that was offered to her, please let me know.

Sincerely,

Lorenzo R. Cabantog

Cisco Systems, Inc.
170 West Tasman Drive
San Jose, CA 95134-1706

Phone: 408 526-4000
Fax: 408 526-4100
www.cisco.com



Cisco Confidential