**JAMS ARBITRATION**
**REF NO. 5440009195**

| | | |
|---|---|---|
| **CRISELDA ANGELA BELL,**<br><br>*Claimant,*<br><br>v.<br><br>**CISCO SYSTEMS, INC.**<br><br>*Respondent.* | ) ) ) ) ) ) ) ) ) ) ) | CLAIMANT'S RESPONSE IN OPPOSITION TO RESPONDENT'S MOTION TO DISMISS |

COMES NOW, Claimant Criselda Angela Bell, by and through undersigned counsel, pursuant to Rule 18 of the JAMS Employment Arbitration Rules and Procedures, and hereby respectfully opposes Respondent Cisco Systems, Inc.'s Motion to Dismiss Claimant's Statement of Claims. In support of this Opposition, Claimant states as follows:

**Introduction**

Respondent seeks dismissal of all six counts of Claimant's Statement of Claims based on procedural grounds, asserting that Claimant failed to exhaust administrative remedies, missed applicable statutes of limitations, and lacks viable causes of action under state law. However, Respondent's Motion is premature, internally inconsistent, and contradicted by substantial documentary evidence already in Respondent's possession. Respondent itself acknowledges in its Statement of Defenses that it has not completed its investigation or discovery of all facts and circumstances related to Claimant's allegations, yet simultaneously requests dismissal at the pleading stage. This contradiction alone demonstrates the impropriety of granting the Motion.

Moreover, Respondent's Motion relies on a materially incorrect characterization of Claimant's

role and responsibilities, contains chronologically impossible assertions regarding filing dates, and ignores the continuing nature of the discriminatory conduct alleged. For these reasons and those detailed below, Respondent's Motion to Dismiss should be denied in its entirety.

**Standard of Review**

Under the standard applicable to motions to dismiss, the Arbitrator must accept as true all factual allegations in Claimant's Statement of Claims and determine whether those allegations state plausible claims for relief. USCS Fed Rules Civ Proc R 12. At this stage, the Arbitrator does not resolve factual disputes or weigh evidence. Where substantial documentary evidence supports the allegations and material factual disputes exist, dismissal is inappropriate.

Claimant has already produced over forty pages of contemporaneous documentary evidence supporting her allegations, including internal communications, medical documentation, and other records. This evidence establishes the existence of material factual disputes that cannot be resolved without discovery. Respondent's own admission that it has not completed its investigation further demonstrates that dismissal at this stage would be premature.

**Respondent's Motion Relies on a Materially Incorrect Characterization of Claimant's Role**

Respondent's timeliness arguments rest on the premise that Claimant received clear and unequivocal notice of her termination on September 16, 2024. However, the explanation provided for that termination was materially inaccurate, which undermines the reliability of that notice as a trigger for the statute of limitations.

Respondent's counsel, Mr. Lorenzo Cabantog, asserts that Claimant's role was eliminated because a program called Play for Points was discontinued. This assertion is factually incorrect. Claimant never owned or managed Play for Points. Claimant's program was Renewal Plays, a separate and distinct program. Play for Points was a supplemental reward program conceptualized years after Renewal Plays originated and was owned by Claimant's teammates Saliha Oner and Neil Englemen, both of whom were also impacted by the layoff. Play for Points had been discontinued since May 2024, months before the September layoffs.

Between July and September 2025, Claimant exchanged multiple emails with Respondent's Human Resources investigator, Miss Jessica Siegel, who repeatedly identified Renewal Plays as the subject of her investigation into Claimant's layoff. Respondent's own internal investigator therefore acknowledged the correct program associated with Claimant's position.

This discrepancy is not a minor clerical error. It demonstrates that the explanation Respondent now offers for Claimant's termination does not match the actual work Claimant performed. A notice cannot be considered clear and unequivocal when the reason communicated to the employee is materially incorrect. When the explanation provided for termination does not correspond to the employee's actual role, the notice does not clearly convey the true basis of the decision.

Furthermore, Claimant possesses substantial documentary evidence demonstrating that the work she performed for Renewal Plays continued after her separation under a rebranded label called Campaigns. Claimant has screenshots showing that colleagues are currently running the

Campaigns Program using the same designs and playbooks that Claimant developed for Renewal Plays. Claimant possesses more than forty pages of documentary evidence, including internal emails, chat messages, screenshots, and artifacts, demonstrating that her actual program was Renewal Plays and that the same underlying work product continued after her separation.

At minimum, the contradiction between Mr. Cabantog's statement referencing Play for Points, Miss Siegel's repeated references to Renewal Plays, and the continued existence of the work under Campaigns creates a material factual dispute regarding the basis for Claimant's termination. Such factual disputes cannot be resolved on a motion to dismiss.

**The Retaliation Claim Was Adequately Exhausted Through the EEOC Process**

Respondent argues that Claimant's retaliation claim should be dismissed because it was not explicitly checked on the EEOC charge form. However, Claimant provided the Equal Employment Opportunity Commission with substantial information regarding retaliatory conduct during the intake process.

During Claimant's meeting with the EEOC in their Raleigh office, Claimant met with EEOC officer Miss Sandra Furey and provided a sworn narrative that expressly described both the September 8, 2025 decision denying her internal discrimination complaint and the termination that followed the next day. Claimant also provided Miss Furey with printed documentation and supporting evidence reflecting these events, including materials documenting what occurred on September 8 and September 9, 2025.

These materials were reviewed by the EEOC officer as part of the intake process and clearly described the sequence of events giving rise to Claimant's retaliation allegations. The EEOC and Respondent were therefore placed on notice of a retaliation claim that is reasonably related to and grows out of the underlying discrimination charge.

The temporal proximity between Claimant's internal discrimination complaint filed on July 25, 2025, Respondent's denial of that complaint on September 8, 2025, and Claimant's termination on September 9, 2025, establishes a clear retaliatory sequence. Less than twenty-four hours elapsed between Respondent's denial of Claimant's complaint and her termination. This extreme temporal proximity supports a strong inference of retaliatory motive.

Moreover, Respondent maintained an active internal appeal and investigation process conducted by HR Investigator Miss Jessica Siegel for several weeks from late July 2025 through early September 2025. Throughout this period, Claimant provided documentation and communications regarding the circumstances of her layoff. On September 8, 2025, Respondent issued its final response at approximately 6:00 p.m., denying any wrongdoing and declining to revisit the layoff decision. By choosing to affirm the layoff after completing this investigation, Respondent exercised discretion to finalize Claimant's termination at that time.

The retaliation claim is therefore reasonably related to the discrimination claims raised in the EEOC charge and was adequately exhausted through the information provided during the EEOC intake process.

**The Continuing Violation Doctrine Applies to Claimant's Claims**

Respondent argues that Claimant's federal discrimination claims are time-barred because she did not file her EEOC charge within 180 days of the September 16, 2024 layoff notification. 42 USCS § 2000e-5. However, this argument ignores the continuing nature of the discriminatory conduct alleged.

During Claimant's meeting with the EEOC, officer Miss Sandra Furey explained that although the initial notification of Claimant's layoff occurred in September 2024, the events should be viewed as a series of cumulative acts of discrimination, with the most recent occurring on May 1, 2025, when Claimant learned of [Comparator Employee]'s better treatment compared to her own. Miss Furey advised that the relevant filing period should be calculated from the most recent discriminatory act and that the 180-day period would therefore run from May 1, 2025, rather than from September 2024, because the conduct constituted a continuing sequence of related actions rather than a single isolated event.

The discriminatory conduct alleged by Claimant includes not only the initial layoff notification but also the systematic denial of maternity leave benefits, the requirement that Claimant repeatedly renew her disability status every six weeks with no guarantee of approval, and the disparate treatment compared to a similarly situated white employee under age 40. These actions continued through Claimant's delivery on February 6, 2025, and through her discovery of the disparate treatment in May 2025.

The continuing nature of this conduct is further evidenced by the fact that Claimant remained on

Respondent's payroll through September 9, 2025, nearly one year after the initial layoff notification. During this entire period, Claimant was subjected to ongoing uncertainty regarding her benefits, repeated administrative hurdles, and disparate treatment based on her protected characteristics.

**The Arbitration Demand Was Timely Filed**

Respondent argues that Claimant's arbitration demand was untimely because it was filed more than 90 days after receipt of the EEOC right-to-sue notice. 42 USCS § 2000e-5. However, Respondent's Motion contains a chronologically impossible assertion that undermines this argument.

Respondent states that Claimant received her EEOC Right-to-Sue Notice on September 30, 2025, and that the deadline to initiate arbitration was December 29, 2025. Respondent then claims that Claimant filed her arbitration demand on January 23, 2025, allegedly 115 days after the right-to-sue letter. This assertion is chronologically impossible. A filing on January 23, 2025, cannot occur after a notice issued on September 30, 2025, because January 2025 precedes September 2025.

The only logical interpretation is that Respondent intended to write January 23, 2026, not 2025. This internal contradiction calls into question the reliability of Respondent's timeline and undermines the credibility of its timeliness arguments.

Moreover, Claimant timely initiated arbitration in accordance with the parties' arbitration

agreement. The agreement states that the arbitration shall take place in the location of Claimant's choice, either the JAMS office closest to where Claimant lives or the JAMS office closest to the Company office where Claimant works or last worked. Claimant resides in Raleigh, North Carolina, where no JAMS office is located. To comply with the agreement and preserve the contractual deadline, Claimant took steps to initiate arbitration within the required time period.

**Claimant Has Stated Plausible Claims Under Federal Law**

Respondent argues that Claimant has failed to state claims upon which relief can be granted. This assertion is contradicted by the detailed factual allegations in Claimant's Statement of Claims and the substantial documentary evidence already produced.

Claimant's Statement of Claims contains detailed factual allegations describing the sequence of events leading to the adverse employment actions at issue. Claimant has alleged that she is a member of multiple protected classes, that she was qualified for her position, that she suffered adverse employment actions, and that those actions were motivated by her protected characteristics.

Specifically, Claimant has alleged that she received a 130 percent Individual Performance Factor bonus in September 2023, demonstrating strong job performance. Claimant was never placed on a Performance Improvement Plan during her employment. Claimant successfully led the Renewal Plays Program in a project management capacity.

Following Claimant's disclosure of fertility treatments in March 2024, colleague Erin Jurgens

began inserting herself into Claimant's program despite holding a different role and reporting to another manager. By late August 2024, Claimant had been reduced to a support role in her own program, with Erin Jurgens and Ree Singh assuming primary control. On September 16, 2024, Claimant was notified of her layoff while approximately three months pregnant.

Claimant has also alleged disparate treatment compared to a similarly situated employee. [Comparator Employee], a white woman under 40 years of age who was also laid off while pregnant, received fully paid maternity leave extending her employment by six months because her due date fell within the 60-day exit window. In contrast, Claimant was initially informed that she was only eligible for paid maternity leave if still employed at the time of her delivery in February 2025, which was after her original exit date of November 15, 2024. Claimant eventually received paid maternity leave and insurance coverage, but only after navigating repeated approvals and renewing disability every six weeks, causing significant stress during her pregnancy.

These allegations, supported by over forty pages of documentary evidence, establish plausible claims for discrimination based on sex, pregnancy, age, disability, and race, as well as failure to provide reasonable accommodations and retaliation.

**State Law Claims Are Not the Primary Basis for Relief**

Respondent argues that there is no private right of action under the North Carolina Equal Employment Practices Act for age, sex, pregnancy, race, or retaliation claims. N.C. Gen. Stat. § 143-422.1. Respondent also argues that any claims under the North Carolina Persons with Disabilities Protection Act are precluded by Claimant's filing of an EEOC charge under the

Americans with Disabilities Act. N.C. Gen. Stat. § 168A-11.

While Claimant acknowledges these limitations on state law remedies, Claimant's primary claims are brought under federal law, including Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, the Americans with Disabilities Act, and the Pregnant Workers Fairness Act. 29 USCS § 626. 42 USCS § 12117.

These federal statutes provide independent bases for Claimant's claims and are not subject to the limitations on private rights of action under North Carolina state law. Even if the Arbitrator were to find that state law claims are not viable, which Claimant disputes, the federal claims provide a sufficient basis for relief.

**Material Factual Disputes Preclude Dismissal**

Respondent's Motion seeks to resolve factual disputes that are inappropriate for determination at the motion to dismiss stage. The contradiction between Mr. Cabantog's statement that Claimant's role was tied to Play for Points and the documentary evidence showing that Claimant's actual program was Renewal Plays creates a material factual dispute regarding the basis for Claimant's termination.

Similarly, the question of whether the discriminatory conduct constituted a continuing violation, the adequacy of the notice provided to the EEOC regarding retaliation, and the comparative treatment of Claimant versus [Comparator Employee] all involve factual disputes that cannot be resolved without discovery.

Respondent itself acknowledges in its Statement of Defenses that it has not yet completed its investigation or completed discovery of all facts and circumstances of the subject matter of the Statement of Claims. Despite this admission, Respondent asks the Arbitrator to dismiss Claimant's claims at the pleading stage. This request is improper where substantial documentary evidence supports the allegations and material factual disputes exist.

**Respondent's Affirmative Defenses Do Not Support Dismissal**

Respondent has asserted thirty-two affirmative defenses in its Response to the Statement of Claims. However, affirmative defenses are not properly resolved on a motion to dismiss. Affirmative defenses require factual development through discovery and are typically addressed through summary judgment or at hearing.

Moreover, many of Respondent's affirmative defenses are contradicted by the evidence already produced. For example, Respondent's Twenty-Second Defense asserts that Claimant failed to utilize available corrective or preventative mechanisms. However, Claimant informed her direct manager, Lucy Shepherd, that colleague Erin Jurgens was overstepping Claimant's program responsibilities and interfering with Claimant's work on the Renewal Plays program. Despite Claimant bringing this issue to management's attention, no corrective action was taken. Claimant later escalated her concerns by filing an internal complaint with Cisco Human Resources in July 2025, demonstrating that she actively utilized the Company's internal complaint mechanisms.

Similarly, Respondent's Twenty-Ninth and Thirtieth Defenses assert that Claimant failed to

request reasonable accommodation or participate in the interactive process. However, Claimant actively engaged with Respondent's Human Resources and benefits representatives regarding her pregnancy-related medical condition and the need for leave and continued benefits. Claimant communicated with Cisco Human Resources representative Miss Samira Haddad regarding her medical status and leave options during her pregnancy. Claimant worked with her medical providers to obtain certification for short-term disability leave, which had to be renewed approximately every six weeks until delivery, with no guarantee of approval at each interval.

These factual disputes demonstrate that Respondent's affirmative defenses do not provide a basis for dismissal at this stage of the proceedings.

**Respondent's Request for Attorneys' Fees Is Unsupported**

Respondent requests that Claimant pay its attorneys' fees and litigation expenses. This request is unsupported by the arbitration agreement and inconsistent with governing legal standards.

Under the American Rule, each party bears its own attorneys' fees unless a statute or contract explicitly provides otherwise. The arbitration agreement at issue contains no provision allowing the Company to recover attorneys' fees from Claimant. The agreement only addresses the allocation of arbitration administrative fees and costs under the JAMS Employment Arbitration Rules, which are distinct from attorneys' fees.

Furthermore, the employment statutes underlying Claimant's claims permit a prevailing employer to recover attorneys' fees only where the claimant's claims are frivolous, unreasonable,

or without foundation. Claimant's claims are supported by substantial documentary evidence, including more than forty pages of records already produced to Respondent. The claims were brought in good faith and cannot plausibly be characterized as frivolous or unreasonable.

For these reasons, Respondent's request that Claimant pay its attorneys' fees and litigation expenses should be denied.

**Conclusion**

Respondent's Motion to Dismiss is premature, internally inconsistent, and contradicted by substantial documentary evidence. Respondent relies on a materially incorrect characterization of Claimant's role, contains chronologically impossible assertions regarding filing dates, and seeks to resolve factual disputes that are inappropriate for determination at the motion to dismiss stage. Respondent itself acknowledges that it has not completed its investigation or discovery, yet simultaneously requests dismissal at the pleading stage.

Claimant has alleged detailed facts supported by over forty pages of documentary evidence establishing plausible claims for discrimination, failure to accommodate, and retaliation under federal law. Material factual disputes exist regarding the basis for Claimant's termination, the continuing nature of the discriminatory conduct, the adequacy of administrative exhaustion, and the timeliness of Claimant's filings. These disputes cannot be resolved without discovery.

For all of these reasons, Respondent's Motion to Dismiss should be denied in its entirety, and this

matter should proceed to discovery and hearing on the merits.

WHEREFORE, Claimant Criselda Angela Bell respectfully requests that this Arbitrator:

1. Deny Respondent's Motion to Dismiss in its entirety;
2. Permit this matter to proceed to discovery and hearing on the merits;
3. Deny Respondent's request for attorneys' fees and costs; and
4. Grant such other and further relief as the Arbitrator deems just and proper.

/s/Amina M. Mack, Esq.
Amina M. Mack (NCSB No. 61390)
**THE MACK LAW FIRM, PLLC**
4242 Six Forks Road, Ste. 1550
Raleigh, NC 27609
Tel: 984-480-7147
legal@themacklaw.com

Attorney for Claimant

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing has been served via email to the counsel of record on ______________, 2026.

Kelly Walker
Littler
620 South Tryon Street, Suite 950
Charlotte, NC 28202
KeWalker@littler.com

Kellie Tabor
Littler
620 South Tryon Street, Suite 950
Charlotte, NC 28202
KTabor@littler.com

Attorneys for Respondent

/s/Amina M. Mack, Esq.
Amina M. Mack (NCSB No. 61390)
**THE MACK LAW FIRM, PLLC**
4242 Six Forks Road, Ste. 1550
Raleigh, NC 27609
Tel: 984-480-7147
legal@themacklaw.com

Attorney for Claimant