**JAMS Ref No: 5440009195**

| | | |
|---|---|---|
| **CRISELDA BELL,** *Claimant,* vs. **CISCO SYSTEMS, INC.,** *Respondent.* | ) ) ) ) ) ) ) | **Hon. Myriam Lehr (Ret.) Arbitrator** |

**ORDER ON RESPONDENT'S RESPONSE TO CLAIMANT'S DEMAND AND MOTION TO DISMISS**

Pending before the Arbitrator are Respondent's Response to Claimant's Demand and Motion to Dismiss [hereinafter "Motion"], Claimant's Response in Opposition to Respondent's Motion to Dismiss [hereinafter "Response"], and Respondents' Reply in Further Support of Its Motion to Dismiss [hereinafter "Reply"]. After considering the parties' submissions and hearing oral argument on May 4, 2026, and being otherwise fully informed, it is hereby

**ORDERED** and **ADJUDGED** that:

In her corrected Statement of Claims, filed on February 20, 2026, Claimant Criselda Bell alleges six counts[1] arising from her termination from Respondent Cisco Systems, Inc.:

1. Discrimination based on sex and pregnancy;
2. Discrimination based on age;
3. Discrimination based on disability;
4. Failure to provide reasonable accommodations;

[1] The Statement of Claims did not specify whether Claimant brought her claims pursuant to state or federal law.

5. Discrimination, based on race; and

6. Retaliation.

On March 6, Respondent filed its Motion, which combined an answer to the corrected Statement of Claims with a motion to dismiss. For the reasons set forth below, the Motion is granted and the case is dismissed.

**Facts**

The factual findings that follow are necessary to the Determination and Award. They are derived from admissions in the pleadings and the testimony and evidentiary exhibits presented. To the extent that these findings differ from any party's position, that is the result of determinations made by the Arbitrator as to credibility and relevance, burden of proof considerations, legal principles, and weighing of the evidence, both oral and written.

Claimant, a 40-year-old woman of color, worked for Respondent beginning in March 2022 through her termination on September 9, 2025. As relevant to the present Motion, in June 2023, Claimant notified her manager, Lucy Shepherd, "of her intention to utilize Respondent's Fertility Program." Statement of Claims ⁋ 8. In July 2023, Claimant confirmed in an email that she had "connected with a Cisco Benefits Pro to discuss her fertility benefits." *Id.* at ⁋ 9. Claimant began her in vitro fertilization (IVF) treatment in March 2024. In an email dated April 30, 2024, Claimant notified Ms. Shepherd that, as part of the IVF process, she had undergone surgery to remove polyps from her uterus. "On June 4, 2024, Claimant underwent embryo transfer," which she learned was successful approximately ten days later. *Id.* at ⁋⁋ 13-14. She publicly announced her pregnancy on

August 9, 2024.

Between April 2024 and August 2024, Claimant felt she was being "systematically pushed out of her program," and being "reduced to a support role in her own program." *Id.* at ¶¶ 21, 20. On September 16, 2024, Ms. Shepherd notified Claimant "that she was being laid off effective November 15, 2024." *Id.* at ¶ 22.

On September 27, 2024, Claimant's doctor "recommended immediate leave of absence due to high anxiety, severe stress, and high-risk pregnancy." *Id.* at ¶ 26. Beginning September 29, 2024, Claimant was placed on disability leave which continued through the birth of her child on February 6, 2025. According to Claimant, she had to renew her disability leave approval every six weeks. Subsequent to the birth of her child, she was placed on maternity leave, "but only after navigating repeated approvals." *Id.* at ¶ 33. "In May 2025, Claimant discovered via LinkedIn that a comparator employee, (Comparator Employee) [a white woman under 40], had received fully paid maternity leave extending her employment by six months." *Id.* at ¶¶ 30-31.

"On July 25, 2025, Claimant filed an internal discrimination complaint with Respondent alleging intersectional discrimination and requesting an enhanced severance package." *Id.* at ¶ 42. Following an internal investigation, on September 8, 2025, Respondent denied any wrongdoing. "Claimant was terminated on September 9, 2025." *Id.* at ¶ 44.[2]

[2] In her EEOC charge, Claimant describes the timing of her maternity leave and termination slightly differently. In the EEOC charge, she states that she was on "maternity leave for about 5 months until July 25, 2025. Once [she] returned from [her] maternity [she] invoked [her] 60 days transitioning period since Cisco still was moving

"On September 22, 2025, Claimant filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC), Charge No. 433-2025-04606," alleging "discrimination based on age, disability, pregnancy, race, and sex." *Id.* at ¶¶ 47-48. The EEOC issued a right to sue letter on September 30, 2025.

According to Claimant, she "timely initiated arbitration in accordance with the parties' arbitration agreement" by filing a Demand with the American Arbitration Association ("AAA") within 90 days of the issuance of the EEOC's right to sue letter; i.e., prior to December 29, 2025. Response at 7-8. Following the argument on May 4, 2026, Claimant submitted a two-page document titled "Employment Arbitration Rules Demand for Arbitration." Although Claimant asserts this document was filed with AAA on December 22, 2025, no date appears on the form. Further, at the top, the form states "Review your information," while at the bottom of each page, the form states "Please visit our website at www.adr.org/support to file this case online." Although it appears that this form may not have been submitted to AAA for processing, for purposes of the present Motion, the Arbitrator will accept Claimant's representation that it was filed with AAA on December 22, 2025.

On February 8, 2026, Claimant filed a demand for arbitration with JAMS. On February 20, 2026, Claimant filed a corrected Statement of Claims. In response,

---

forward with [her] layoff (RIF)." EEOC Charge at 1. This statement is consistent with Respondent's description of the events. Mot. at 8, n.6 ("Claimant was on paid pregnancy/childbirth disability leave and child bonding leave. Upon her return from leave, and after the completion of the 60-day transition period, Claimant's employment was terminated effective September 9, 2025." (internal citations omitted)).

Respondent filed the present Motion, which included a general denial of all allegations and thirty-two affirmative defenses.

The Arbitrator held a preliminary conference on March 27, 2026. During that preliminary conference, the parties acknowledged that the arbitration is governed by the Mutual Agreement to Arbitrate [hereinafter "Arbitration Agreement"] entered into by the parties on March 4, 2022. In addition, the parties stipulated that the JAMS Employment Arbitration Rules & Procedures would govern the proceedings and "that federal substantive law will govern any federal claim and issues." Sched. Order No. 1 at 2. Further, with respect to substantive law, the parties agreed that the arbitration

> is governed by the Federal Arbitration Act and not by any state arbitration law. The arbitrator must apply applicable statutes of limitations and claims of privilege recognized at law, and applicable substantive law consistent with the Federal Arbitration Act. The arbitrator is authorized to award all individual remedies permitted by substantive law that would apply if the action were pending in court.

*Id.*

**<u>The parties' arguments</u>**

In the Motion, Respondent argues that Claimant's case should be dismissed for five reasons:

> (1) she failed to exhaust her administrative remedies with respect to any federal retaliation claim; (2) any Title VII, ADEA, ADA, PWFA and retaliation claims are time-barred; (3) there is no private right of action for any state age discrimination, sex/pregnancy discrimination, race discrimination, or retaliation claims; (4) she is precluded as a matter of law from seeking a remedy under the North Carolina Persons with Disabilities Protection Act ("NCPDPA") because she filed an EEOC Charge regarding

the same conduct;[3] and (5) any such NCPDPA claim is untimely regardless.

Mot. at 3.

In opposition, Claimant asserts that "Respondent's Motion is premature, internally inconsistent, and contradicted by substantial documentary evidence already in Respondent's possession." Resp. at 1. As to the documentary evidence, Claimant notes that she "has already produced over forty pages of contemporaneous documentary evidence" that "establishes the existence of material factual disputes that cannot be resolved without discovery." *Id.* at 2. However, other than four documents[4] submitted after the argument held on May 4, 2026, Claimant has provided no documentary evidence

---

[3] "Claimant acknowledges these limitations on state law remedies," noting that her "primary claims are brought under federal law[s]," which "provide independent bases for Claimant's claims and are not subject to the limitations on private rights of action under North Carolina state law." Resp. at 11. Little discussion is required to address any potential state law claims because "no private cause of action exists under the [Equal Employment Practices Act]." *Woody v. AccuQuest Hearing Ctr., LLC*, 877 S.E.2d 1, 6 (N.C. Ct. App. 2022). Thus, any claims based on "discrimination or abridgement on account of race, religion, color, national origin, age, sex or handicap" cannot be raised pursuant to the EEPA. *Id.* at 4-5. Similarly, Claimant's state disability claim is barred by North Carolina's statutes. *Bowling v. Margaret R. Pardee Mem'l Hosp.*, 635 S.E.2d 624, 629 (N.C. Ct. App. 2006) ("hold[ing] that N.C. Gen. Stat. § 168A–11(c) requires dismissal of a state law claim when an EEOC claim is commenced"). Therefore, Claimant's claims will only be analyzed based on federal statutes and related caselaw.

[4] The four documents submitted by Claimant following argument on May 4, 2026 are (1) the EEOC charge, (2) the purported demand filed with AAA, (3) an email exchange between Claimant and Sandra Furey at the EEOC, dated September 23, 2025, regarding Claimant's inquiry about the availability of mediation and the timing of receipt of a right to sue letter, and (4) an email from Jennifer Lane, a supervisory investigator at the EEOC, to Claimant dated September 19, 2025, informing Claimant that her inquiry dated September 18, 2025, was "not a charge of discrimination," and that "the laws we enforce require you to file a charge of discrimination before you can file a lawsuit for unlawful discrimination."

in support of her opposition to the Motion. As to the material disputes of fact, Claimant references "[t]he contradiction between Mr. Cabantog's[5] statement that Claimant's role was tied to Play for Points and the documentary evidence showing that Claimant's actual program was Renewal Plays." *Id.* at 11. Without any explanation, Claimant also cites "the question of whether the discriminatory conduct constituted a continuing violation, the adequacy of the notice provided to the EEOC regarding retaliation, and the comparative treatment of Claimant versus (Comparator Employee)" as additional examples of "factual disputes that cannot be resolved without discovery." *Id.* at 11-12.

Claimant raises two points in opposition to Respondent's arguments regarding untimeliness. First, Claimant maintains that Respondent's argument regarding untimeliness of the filing of the EEOC charge "ignores the continuing nature of the discriminatory conduct alleged." *Id.* at 6. In Claimant's view, "the events should be viewed as a series of cumulative acts of discrimination, with the most recent occurring on May 1, 2025, when Claimant learned of (Comparator Employee)'s better treatment compared to her own." *Id.* According to Claimant, "[t]he discriminatory conduct . . . includes not only the initial layoff notification but also the systematic denial of maternity leave benefits, the requirement that Claimant repeatedly renew her disability status every six weeks with no guarantee of approval, and the disparate treatment compared to a similarly situated white employee under age 40." *Id.* at 6-7. Second, Claimant asserts that the Demand that was

---

[5] Claimant describes Mr. Lorenzo Cabantog as "Respondent's counsel," Response at 3, but Mr. Cabantog has not entered an appearance in this case, is not listed on the service list, and has not signed any pleadings or motions.

timely filed with AAA should toll the filing deadline with JAMS due to the vagueness of the Arbitration Agreement's venue provision.

**Legal standard**

Rule 18 of the JAMS Employment Arbitration Rules & Procedures allows for the filing of a Motion for Summary Disposition, but provides no specific criteria for evaluating such motions. Therefore, the Arbitrator must look elsewhere for guidance on the appropriate standards to apply. Since "[t]he parties stipulate[d] that federal substantive law will govern any federal claim and issues," Sched. Order No. 1 at 2, the Arbitrator will look to federal law for the standards to apply in evaluating the Motion.

> Dismissal is proper if the well-pleaded facts of the complaint, taken in the light most favorable to the plaintiff and excluding "unwarranted inferences, unreasonable conclusions, or arguments," fail to state a plausible claim for relief. The Court may also consider documents attached to the complaint or incorporated by reference, including those attached to the motion to dismiss, so long as they are integral to the complaint and authentic, and may take judicial notice of matters of public record. Claims may be dismissed at the Rule 12(b)(6) stage based upon an affirmative defense, such as the statute of limitations in this case, where the relevant facts "clearly appear on the face of the complaint."

*Epcon Homestead, LLC v. Town of Chapel Hill*, 62 F.4th 882, 885 (4th Cir. 2023) (internal citations omitted) (quoting *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014) and *Briscoe v. W.A. Chester, LLC*, 799 F. App'x 183, 183 (4th Cir. 2020)).

Title VII sets forth the procedure a claimant must follow in bringing a claim of discrimination. The first step in the process requires that a charge must be filed with the EEOC within 180 days "after the alleged unlawful employment practice occurred." 42

U.S.C. § 2000e-5(e)(1).[6] "When the EEOC receives a charge, . . . the EEOC notifies the employer and investigates the allegations." *Fort Bend Cnty., Texas v. Davis*, 587 U.S. 541, 544 (2019). "In the event that the EEOC determines there is 'n[o] reasonable cause to believe that the charge is true,' the Commission is to dismiss the charge and notify the complainant of his or her right to sue in court." *Id.* at 545 (quoting 42 U.S.C. § 2000e–5(b)). Then, "within 90 days following such notice, the complainant may commence a civil action against the allegedly offending employer." *Id.* The Supreme Court has concluded that the requirement to file a charge within 180 days is a mandatory claim-processing rule. *Id.* at 551.

The Supreme Court has interpreted other aspects of Title VII. For example, the Court has held "that the statute precludes recovery for discrete acts of discrimination or retaliation that occur outside the statutory time period." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002). "A discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.'" *Id.* at 110. "Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Id.* at 113. "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify." *Id.* at 114.[7]

---

[6] The Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 626(d), also includes a 180-day deadline for filing a charge with the EEOC. Similarly, "the [Americans with Disabilities Act ("ADA")] incorporates [Title VII of the Civil Rights Act of 1964]'s enforcement procedures, including the requirement that a plaintiff must exhaust his administrative remedies by filing a charge with the EEOC before pursuing a suit in federal court." *Sydnor v. Fairfax Cnty., Va.*, 681 F.3d 591, 593 (4th Cir. 2012) (internal citations omitted).

[7] Although the Court recognized that "[h]ostile work environment claims are different in kind from discrete acts [because t]heir very nature involves repeated conduct," *Morgan*,

As the Fourth Circuit has stated, "the filing period runs from the time at which the employee is informed of the allegedly discriminatory employment decision, regardless of when the effects of that decision come to fruition." *Price v. Litton Bus. Sys., Inc.*, 694 F.2d 963, 965 (4th Cir. 1982).

As to claims for retaliation, "[t]o support a claim for retaliation under Title VII, a plaintiff must show '(1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action." *Barnhill v. Bondi*, 138 F.4th 123, 132 (4th Cir. 2025) (quoting *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010)).

**Discussion**

Construing Claimant's Statement of Claims broadly, only three adverse employment actions are discernable: (1) the alleged reduction in her job responsibilities that occurred between April 2024 and August 2024, (2) the notice of her termination on September 16, 2024[8] and (3) allowance of five, rather than six, months of maternity leave, which occurred at the latest on February 6, 2025. All three of these adverse employment actions occurred more than 180 days prior to September 22, 2025, the date Claimant filed her charge of discrimination with the EEOC. Therefore, the EEOC charge was untimely with respect to all of the alleged adverse employment actions. Since Claimant's charge was filed beyond

---

536 U.S. at 115, Claimant has not alleged the existence of a hostile work environment. Therefore, consideration of "all the circumstances" is not necessary. *Id.* at 116.

[8] Since Claimant was notified of her termination on September 16, 2024, that is the date of the adverse employment action, not the date of her termination on September 9, 2025. *See Price v. Litton Bus. Sys., Inc.*, 694 F.2d at 965.

the mandatory 180-day deadline, the discrimination claims must be dismissed.

Although Claimant states that "the events should be viewed as a series of cumulative acts of discrimination," Resp. at 6, Supreme Court precedent clearly contradicts this assertion. Claimant cites no statute or case law that calls that precedent into question. In addition, Claimant avers that "the question of whether the discriminatory conduct constituted a continuing violation," *id.* at 11, is a factual dispute requiring additional discovery. Claimant also points to other alleged factual disputes surrounding the alleged discriminatory acts themselves. However, no factual dispute exists regarding the timing of the discrete adverse employment actions that form the basis of Claimant's claims. No amount of discovery will change the dates these discrete events occurred. Therefore, Claimant has failed to identify any disputed fact related to the timing of the adverse employment actions that would alter the deadline for filing the charge of discrimination with the EEOC.

As to Claimant's claim for retaliation, the allegations in the Statement of Claims fail to establish a prima facie case of retaliation. Although Claimant has adequately alleged a protected activity (her filing an internal discrimination complaint) and an adverse employment action (her termination) she has failed to allege a causal connection between the two. In fact, since she received notice of her termination in September 2024, approximately ten months before she engaged in the protected activity, establishing a causal connection between the two events is impossible. Since it is impossible for Claimant to establish a prima facie case of retaliation, the Arbitrator does not need to decide whether the charge of discrimination filed with the EEOC sufficiently articulates a claim for

retaliation.

Having found that Claimant failed to timely file her charge of discrimination with the EEOC and that she has failed to establish a prima facie case of retaliation, the Arbitrator does not need to reach any of the other arguments raised by Respondent.

**Conclusion**

For the reasons set forth above, Respondent's Motion to Dismiss is GRANTED.

SO ORDERED this 8th day of June, 2026.

Myriam Lehr

Hon. Myriam Lehr Arbitrator

Copies furnished to all parties by JAMS