**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**RALEIGH**

CRISELDA ANGELA BELL,

Petitioner,

v.

CISCO SYSTEMS, INC.,

Respondent.

Civil Action No. 5:26-CV-00555-M

**RESPONDENT'S RESPONSE IN OPPOSITION TO PETITIONER'S PETITION TO VACATE ARBITRATION AWARD PURSUANT TO 9 U.S.C. § 10**

Respondent Cisco Systems, Inc. ("Cisco") hereby submits this Response in Opposition to Petitioner's Petition to Vacate Arbitration Award Pursuant to 9 U.S.C. § 10. (ECF No. 1, (the "Petition")). For the reasons set forth herein, the Petition should be summarily denied.

## I. INTRODUCTION

"Convincing a federal court to vacate an arbitral award is herculean task." *Warfield v. Icon Advisers, Inc.*, 26 F.4th 666, 669 (4th Cir. 2022). "Indeed, the scope of review of an arbitrator's . . . decision is among the narrowest known at law because to allow full scrutiny of such awards would frustrate the purpose of having arbitration at all – the quick resolution of disputes and the avoidance of the expense and delay associated with litigation." (*Id.)* (quoting *Apex Plumbing Supply v. U.S. Supply Co.*, 142 F.3d 188, 193 (4th Cir. 1998)).

Petitioner Criselda Angela Bell ("Ms. Bell") seeks to vacate the Arbitrator's award in this JAMS matter dismissing her action for failure to timely exhaust administrative remedies and for failure to state a claim upon which relief can be granted. (ECF 1-9, the "Order on Motion to Dismiss"; 1-11, the "Clarification Order"). However, Ms. Bell fails to establish any of the extraordinarily limited grounds necessary to disturb an arbitration award. She does not demonstrate that the Arbitrator exceeded her authority, manifestly disregarded controlling law, or refused to

hear evidence pertinent and material to the controversy. Instead, Ms. Bell transparently seeks a second bite at the apple by rehashing the same arguments that were previously submitted to and rejected by the Arbitrator.

First, the Arbitrator exercised the authority given to her under the Arbitration Agreement by resolving the claims and defenses submitted to her by the parties, not an unsubmitted issue. The Arbitrator's requirement to apply applicable substantive law does not convert alleged legal error into an excess of authority.

Second, the Arbitrator did not manifestly disregard controlling law, and instead appropriately applied U.S. Supreme Court and Fourth Circuit precedent, which the parties stipulated applied to Ms. Bell's action. *See* Exhibit A, Revised Report of Preliminary Hearing and Scheduling Order No. 1 ("Scheduling Order"), §5(b). Rather than identifying any specific instances of the Arbitrator's alleged disregard for binding law, which Ms. Bell is required to do in order to succeed on vacatur, Ms. Bell simply lays out her mere disagreement with the outcome. In doing so, Ms. Bell ignores the express authority that the Arbitrator was granted by the parties' Mutual Agreement to Arbitrate (ECF No. 1-5, the "Arbitration Agreement"). Ms. Bell likewise ignores the vast and uniform body of case law holding that the Arbitrator's award is not to be disturbed unless the petitioner can establish evident partiality, some sort of misconduct on the part of the Arbitrator, or that the Arbitrator manifestly disregarded the law – which Ms. Bell has completely failed to do.

Significantly, Ms. Bell's own Petition acknowledges that "[t]he Arbitrator's June 20, 2026 Order demonstrates awareness of the equitable tolling framework" and that the Arbitrator "addressed the tolling question directly and cited controlling Fourth Circuit authority." (ECF 1 at ¶ 28). This admission alone undermines Ms. Bell's contention that the Arbitrator disregarded the

law. The record instead demonstrates that the Arbitrator considered Ms. Bell's arguments, applied controlling precedent, and explained why Ms. Bell's proposed discovery-based tolling theory failed under governing Fourth Circuit law.

Third, the Arbitrator did not refuse to hear any evidence pertinent and material to Respondent's Motion to Dismiss. To the contrary, the Arbitrator invited Ms. Bell to submit any additional evidence she believed was relevant to her arguments opposing the Motion to Dismiss, and Ms. Bell submitted additional documents after briefing was closed and following oral argument on the Motion to Dismiss. (Order on Motion to Dismiss, at 6, n. 4).

Because Ms. Bell has failed to establish any basis for vacatur under the Federal Arbitration Act or Fourth Circuit precedent, and instead merely seeks a second opportunity to challenge the correctness of the Arbitrator's decision, Cisco respectfully requests that the Court enter an Order denying Ms. Bell's Petition.

## II. BACKGROUND

This action arises out of Ms. Bell's former employment with Cisco. At the inception of Ms. Bell's employment, the parties entered into the Arbitration Agreement. (ECF No. 1-5). Ms. Bell initiated arbitration with JAMS pursuant to the Arbitration Agreement. Pursuant to the Arbitration Agreement and JAMS Rules, JAMS provided the parties with a panel of Arbitrators, and the parties submitted strike and ranking lists. (*See* Exhibit B, Commencement of Employment Arbitration (without enclosures)). Hon. Myriam Lehr, retired 11th Judicial Circuit Court of Florida Judge, was appointed as Arbitrator. (*See* Exhibit C, Appointment of Arbitrator (without enclosures)). Judge Lehr is an experienced judge with ample employment law experience. (*See* https://www.jamsadr.com/neutrals/lehr)(accessed September 18, 2026).

On February 20, 2026, Ms. Bell filed a Statement of Claims (ECF No. 1-6) and Corrected Statement of Claims. (*See* Exhibit D, Corrected Statement of Claims) (collectively "Statement of Claims").

In her Statement of Claims, Ms. Bell asserted six causes of action arising from the termination of her employment: (1) sex and pregnancy discrimination; (2) age discrimination; (3) disability discrimination; (4) failure to provide a reasonable accommodation; (5) race discrimination; and (6) retaliation. (ECF No. 1-6; Exhibit D).

On March 6, 2026, Cisco filed its Response to Ms. Bell's Statement of Claims and Motion to Dismiss. (ECF No. 1-7, the "Motion to Dismiss"). Ms. Bell filed her Opposition on March 18, 2026 (ECF No. 1-8), and Cisco submitted its Reply in Further Support of the Motion to Dismiss on March 25, 2026 (*See* Exhibit E, Respondent's Reply in Further Support of Its Motion to Dismiss). The Arbitrator heard oral argument on the Motion on May 4, 2026. (Order on Motion to Dismiss, at 1). Notably, although briefing on the Motion had already closed, the Arbitrator afforded Ms. Bell an additional opportunity to submit any documents or evidence she believed supported her claims. (*Id.* at 6, n.4).

Following the hearing, Ms. Bell submitted four additional documents: (1) the EEOC Charge; (2) the purported demand filed with the AAA; (3) a September 23, 2025 email exchange with EEOC Investigator Sandra Furey regarding the mediation and the timing of a right-to-sue notice; and (4) a September 19, 2025 email from EEOC Supervisory Investigator Jennifer Lane informing Ms. Bell that her September 18, 2025 inquiry was "not a charge of discrimination" and advising that "the laws we enforce require you to file a charge of discrimination before you can file a lawsuit for unlawful discrimination." (Order on Motion to Dismiss, at 6, n.4). Despite being given an additional opportunity to supplement the record after briefing had closed, Ms. Bell

submitted no authority establishing that her proposed discovery-based tolling theory is recognized under controlling Fourth Circuit law or any evidence in support of that theory. (*Id.*)

On June 8, 2026, the Arbitrator granted Cisco's Motion to Dismiss, concluding that Ms. Bell failed to timely file her charge of discrimination with the EEOC and failed to establish a *prima facie* case of retaliation. (Order on Motion to Dismiss at 8-12). Ms. Bell subsequently filed an Application for Clarification or Supplemental Order on June 11, 2026, seeking clarification as to whether the Arbitrator had considered her "specific, separately presented equitable tolling argument based on later-discovered information and allegedly evolving explanations for Claimant's separation." (ECF No. 1-10 ("Application for Clarification") at 1).

On June 22, 2026, the Arbitrator issued a Clarification Order expressly addressing that issue. (ECF No. 1-11). The Arbitrator explained that she had considered Ms. Bell's discovery-rule tolling argument and rejected it as "unsupported by case law." (*Id.* at 2) The Arbitrator further cited controlling Fourth Circuit authority and explained that equitable tolling requires evidence of "a deliberate design by the employer or of actions that the employer should unmistakably have understood would cause the employer to delay filing his charge." (*Id.*) The Arbitrator concluded that Ms. Bell's allegations did not satisfy that standard. (*Id.*) The Arbitrator further stated that "[a]ny arguments not addressed here were found to be unavailing, without merit, academic, or unnecessary to reach." (*Id*. at 3)

Despite this clear explanation—and the lack of any indication of partiality, misconduct, or misapplication of the law by the Arbitrator—Ms. Bell now seeks vacatur of the Arbitration Award based largely on the same discovery-rule tolling argument that was expressly considered, analyzed, and rejected by the Arbitrator.

## III. <u>ARGUMENT</u>

### A. The Legal Standard Required for Vacating an Arbitration Award is an Extremely High Threshold, which Ms. Bell Cannot Meet.

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which [s]he has not agreed so to submit. By the same token, when a party has agreed to submit a dispute to arbitration, [s]he should not be deprived of the arbitrator's judgment, since it was the judgment of the arbitrator, not a court, for which [s]he bargained." *Constellium Rolled Prods. Ravenswood, LLC v. United Steel Workers Int'l Union*, 18 F.4th 736, 740 (4th Cir. 2021) (internal citations and quotations omitted).

The Federal Arbitration Act provides that a Court may only vacate an arbitration award only on one of the four following grounds: "(1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators . . . ; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a).

In addition to the very narrow statutory grounds for vacating an arbitral award found in 9 U.S.C. § 10(a), the Fourth Circuit has recognized that a district court may vacate an arbitral award that rests upon a "manifest disregard" of the law. *Warfield*, 26 F.4th at 669. "To establish manifest disregard, a [petitioner] must demonstrate: '(1) the disputed legal principle is clearly defined and is not subject to reasonable debate; and (2) the arbitrator refused to apply that legal principle.'" (*Id*. at 669-670) (quoting *Jones v. Dancel*, 792 F.3d 395, 402 (4th Cir. 2015)). To successfully demonstrate the first element, Ms. Bell is required to present to the Arbitrator "binding precedent

requiring a contrary result." (*Id*. at 670). To demonstrate the second element, Ms. Bell must offer "something more than merely establishing that the [Arbitrator] misapplied the law;" instead, she is required to present evidence that the Arbitrator "knowingly rejected a controlling precedent." (*Id*. at 672) (citing *Remmey v. PaineWebber, Inc.*, 32 F.3d 143, 149 (4th Cir. 1994)).

Importantly, mere legal error is not a ground for vacating an arbitration award. *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987). "Courts … do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts." (*Id.)* Rather, "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of h[er] authority, that a court is convinced [s]he committed serious error does not suffice to overturn h[er] decision." (*Id*.)

Against this demanding backdrop, Ms. Bell advances three related theories for vacatur. She contends that the Arbitrator (1) exceeded her powers under 9 U.S.C. § 10(a)(4) by applying a legal standard requiring "deliberate design," rather than her proposed discovery-based equitable tolling standard; (2) manifestly disregarded the law by rejecting that discovery-based theory; and (3) refused to hear pertinent and material evidence under 9 U.S.C. § 10(a)(3) by dismissing her claims before discovery. (Petition, ¶ 4).[1]

Applying this uniformly established, stringent standard, it is evident that Ms. Bell's Petition cannot succeed.[2]

---

[1] Ms. Bell does not contend that the Award was procured by corruption, fraud, or undue means under 9 U.S.C. § 10(a)(1), or that the Arbitrator demonstrated evident partiality or corruption under 9 U.S.C. § 10(a)(2). Nor could she; the Petition does not allege facts that could plausibly support relief under either provision.

[2] Ms. Bell's Petition materially expands upon the factual allegations presented to the Arbitrator, particularly with respect to her contention that she lacked any reason to suspect discrimination until May 2025, her narrative concerning the alleged rebranding of Renewal Plays into Campaigns and subsequent Venngage notification, and the extent to which her pregnancy, medical treatment, disability-leave administration, immigration sponsorship obligations, and postpartum circumstances allegedly prevented her from investigating her claims during the limitations period. (Petition, ¶¶ 9-13). Judicial review of an arbitration award, however, is "among the narrowest known at law" and is confined to determining whether one of the limited grounds for vacatur set forth in the FAA is present, not to

**B. Ms. Bell Fails to Meet the High Burden of Establishing the Arbitrator Exceeded Her Powers.**

**i. Ms. Bell Challenges the Arbitrator's Legal Conclusions, Not the Scope of Her Authority.**

Under the Federal Arbitration Act, an arbitration award may be vacated when "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). In evaluating whether an arbitrator has exceeded her power, courts have generally recognized that "any doubts concerning the scope of arbitrable issues as well as any doubts concerning the scope of the arbitrators' remedial authority, are to be resolved in favor of the arbitrators' authority as a matter of federal law and policy." *Three S Del., Inc. v. DataQuick Info. Sys., Inc.*, 492 F.3d 520, 531-32 (4th Cir. 2007) (citing *Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.*, 991 F.2d 141, 147 (4th Cir.1993)).

Ms. Bell argues that the Arbitrator exceeded her authority by declining to adopt her discovery-rule theory and instead applying controlling Fourth Circuit law to determine when her claims accrued and whether equitable tolling applied. (Petition ¶¶ 4, 22-25). But that argument does not identify any action outside the scope of the Arbitrator's authority. Rather, it reflects a disagreement with the Arbitrator's legal analysis and ultimate conclusion that Ms. Bell's claims were untimely.

The parties fully briefed Ms. Bell's discovery-rule theory and the Arbitrator heard oral argument regarding the theory and invited Ms. Bell to submit additional evidence, argument, and authority regarding the theory. (ECF No. 1-8 at 6; Ex. F at 6; Order on Motion to Dismiss at 6-11).

considering new evidence or reweighing facts. *See Warfield*, 26 F.4th at 669 (quoting *Apex Plumbing Supply*, 142 F.3d at 193); *see also Misco, Inc.*, 484 U.S. at 38. Even if accepted as true, Ms. Bell's additional factual elaborations do not establish that the Arbitrator exceeded her powers, refused to hear material evidence, or otherwise acted in a manner that would justify vacatur under 9 U.S.C. § 10.

Despite this opportunity, Ms. Bell **never** provided any legal authority in support of her discovery-rule theory, while Cisco provided applicable Fourth Circuit authority holding the discovery-rule theory inapplicable to employment discrimination and retaliation claims. (ECF No. 1-8 at 6; Order on Motion to Dismiss at 6-7, n.4).

The record confirms the Arbitrator considered Ms. Bell's discovery-rule theory, analyzed the applicable legal standards, and determined controlling federal law did not support such a theory and required dismissal of her claims. (Order on Motion to Dismiss at 8-12; *see generally* Clarification Order). In doing so, the Arbitrator exercised the very authority the parties expressly conferred upon her. (*See* Arbitration Agreement at 1, "The Company and I agree to resolve exclusively through binding arbitration all claims, disputes, or controversies . . . past, present, or future . . . arising out of my employment (or its termination). . ."). Whether Ms. Bell believes the Arbitrator reached the correct result in exercise the authority vetted in her by the parties is immaterial. Section 10(a)(4) permits vacatur only when an arbitrator acts outside the scope of her authority, not when a dissatisfied party disagrees with her reasoning or legal conclusions. *See* 9 U.S.C. § 10(a)(4); *Misco, Inc.*, 484 U.S. at 38 (finding that mere legal error is not a ground for vacating an arbitration award). Because Ms. Bell challenges the correctness of the Arbitrator's decision rather than her authority to make it, her argument fails at the outset.

**ii. The Parties Expressly Authorized the Arbitrator to Apply Federal Law.**

The Arbitration Agreement expressly provided that, "[f]or claims subject to arbitration, the Arbitrator will apply the substantive law of the State in which the employee works or worked, or federal law, or both, as applicable." (Arbitration Agreement at 1). Consistent with that provision, the parties subsequently stipulated that "federal substantive law will govern any federal claim and issues." (Order on Motion to Dismiss at 5 (citing Sched. Order No. 1 at 2)). The parties also

stipulated, "[t]o the extent federal is interpreted by court within the Fourth Circuit, the parties may look to controlling Fourth Circuit precedent and, where applicable, decisions of the United States District Court for the Eastern, Middle, Western District of North Carolina as persuasive authority." (Scheduling Order, at §5(b)). Accordingly, the Arbitrator acted squarely within the authority granted by the parties when she applied controlling Fourth Circuit precedent governing the timeliness of Ms. Bell's federal discrimination claims.

**iii. The Arbitrator Acted Within Her Authority by Applying Controlling Fourth Circuit Law to Dismiss Ms. Bell's Claims.**

In its Reply in Support of Its Motion to Dismiss, Cisco addressed the discovery-rule theory raised in Ms. Bell's Opposition to Respondent's Motion to Dismiss. (Ex. F at 6). In its Reply, Cisco noted Ms. Bell had cited no authority in support of her discovery-rule theory in her Opposition brief. Cisco provided the relevant authority holding a discovery-rule theory is inapplicable to federal employment discrimination and retaliation claims:

> Importantly, "it is 'notice of the employer's actions, not the notice of a discriminatory effect or motivation, that establishes the commencement of the pertinent filing period.'" *Oldham v. Univ. of N. Carolina*, No. 1:22cv513, 2023 WL 3984031, at *7 (M.D.N.C. Jun. 13, 2023) (quoting *Hamilton v. 1st Source Bank*, 928 F.2d 86, 89 (4th Cir. 1990)). In a discriminatory/retaliatory discharge case, the 180-day deadline is counted "from either the time of discharge or from the moment the employee received advanced notice of the pending discharge." *Id.* at *7. "[L]ack of knowledge of the discriminatory nature of an employment decision and the reasons for that lack of knowledge … play no part in determining the beginning of the statutory limitations period." *Id.* (citing *Felty v. Graves-Humphreys Co*., 785 F.2d 516, 519 (4th Cir. 1986)).

(*Id*.)

In granting Cisco's Motion to Dismiss, the Arbitrator expressly relied upon well-established Fourth Circuit authority holding that "the filing period runs from the time at which the employee is informed of the alleged discriminatory employment decision, regardless of when the effects of that decision come to fruition." (Order on Motion to Dismiss at 10 (citing *Price v. Litton*

*Bus. Sys., Inc.*, 694 F.2d 963, 965 (4th Cir. 1982)). The Arbitrator further relied on *National Railroad Passenger Corp. v. Morgan*, which holds that Title VII "precludes recovery for discrete acts of discrimination or retaliation that occur outside the statutory time period" and that "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." (Order on Motion to Dismiss at 9 (citing 536 U.S. 101, 105, 113 (2002)).

Applying these authorities, the Arbitrator examined each alleged adverse employment action identified in Ms. Bell's Statement of Claims to determine whether it fell within the applicable 180-day filing period. (Order on Motion to Dismiss at 10-12). In doing so, the Arbitrator identified three discrete employment actions: (1) the alleged reduction in Ms. Bell's job responsibilities between April and August 2024; (2) the September 16, 2024 notification that her position would be eliminated; and (3) the allegedly discriminatory maternity-leave determination, which occurred no later than February 6, 2025. (*Id.* at 10-11). Consistent with *Morgan*, the Arbitrator treated each event as a separate employment action that triggered its own charge-filing deadline and rejected Ms. Bell's attempt to recast those distinct acts as a "series of cumulative acts of discrimination." (*Id.* at 9-11). The Arbitrator likewise relied on *Price* to conclude that the operative date for Ms. Bell's termination-related claims was September 16, ***2024***, when she was notified of the decision to eliminate her position, rather than September 9, 2025, when that decision ultimately took effect. (*Id.* at 10, n.8). Based on the dates alleged in Ms. Bell's own pleadings, the Arbitrator determined that each of the three challenged actions occurred more than 180 days before Ms. Bell filed her EEOC Charge on September 22, 2025, rendering her discrimination claims untimely. (*Id.* at 10-11). Far from exceeding her authority, the Arbitrator did exactly what the parties empowered her to do: apply controlling federal law to the facts presented to determine whether Ms. Bell's claims were timely.

The Arbitrator likewise acted within her authority when she dismissed Ms. Bell's retaliation claim. The Arbitrator found that Ms. Bell could not establish the causation element of a *prima facie* retaliation claim because she received notice of the challenged employment decision approximately ten months *before* engaging in the alleged protected activity. (Order on Motion to Dismiss at 11-12). Specifically, Ms. Bell alleged that she filed an internal discrimination complaint on July 25, 2025, yet the record established she was informed of her inclusion in Cisco's reduction in force on September 16, 2024. (*Id.* at 3, 10, n.8). As the Arbitrator concluded, "since she received notice of her termination in September 2024, approximately ten months before she engaged in the protected activity, establishing a causal connection between the two events is impossible." (*Id.* at 11) (emphasis in original).

**iv. Ms. Bell Cannot Repackage a Merits Dispute as an Excess-of-Authority Challenge.**

Ms. Bell's Petition ultimately seeks to relitigate the Arbitrator's timeliness determinations by repackaging a disagreement with the Arbitrator's legal conclusions as an excess-of-authority challenge. Yet Ms. Bell's Petition identifies no contractual limitation the Arbitrator violated, no issue she decided that was not submitted to arbitration, and no authority she lacked to apply controlling Fourth Circuit precedent. (*See* Petition ¶¶ 4, 22-25). To the contrary, the Arbitrator did exactly what the parties authorized her to do: evaluate Ms. Bell's claims under the governing law, and based on the parties' briefing and oral argument, determine whether those claims were timely, and issue a final decision on the merits of Cisco's Motion to Dismiss. (*See generally*, Order on Motion to Dismiss).

Whether the Arbitrator's conclusions were correct is not the question before this Court. The relevant inquiry is whether the Arbitrator acted within the scope of the authority conferred by the parties, and the record demonstrates that she plainly did. Because Ms. Bell challenges only the

*correctness* of the Arbitrator's decision, rather than her *authority* to make it, she cannot satisfy the demanding standard for vacatur under 9 U.S.C. § 10(a)(4). *See Three S Del., Inc.*, 492 F.3d at 527 ("a district or appellate court is limited to determine whether the arbitrators did the job they were told to do—not whether they did it well, or correctly. . . ."). Accordingly, Ms. Bell's Petition should be denied, and the Arbitration Award should be confirmed.

### C. Ms. Bell Fails to Meet Her Onerous Burden of Establishing Manifest Disregard of the Law.

When a petition to vacate an arbitration award alleges that the Arbitrator "manifestly disregarded federal law, [the court's] review analyzes that law in only the most cursory sense." *Friedler v. Stifel, Nicolaus, & Co., Inc.*, 108 F.4th 241, 246 (4th Cir. 2024). The question is not whether the arbitrator interpreted the law correctly, but whether there is a "binding precedent requiring a contrary result" that the arbitrator recognized as controlling, found applicable, and nevertheless deliberately ignored. (*Id.* at 246-47) (citing *Warfield*, 26 F.4th at 670-71 and *Constellium*, 18 F.4th at 741 (cleaned up). Accordingly, "[a] confusing, ambiguous, or even incorrect application of the law is not manifest disregard." *Constellium*, 18 F.4th at 743.

"To establish manifest disregard, a [petitioner] must demonstrate: '(1) the disputed legal principle is clearly defined and is not subject to reasonable debate; and (2) the arbitrator refused to apply that legal principle.'" *Warfield*, 26 F.4th at 669-70 (quoting *Jones*, 792 F.3d at 402. Vacatur is warranted only where the arbitrator was "'aware of the law, understood it correctly, found it applicable to the case before h[er], and yet chose to ignore it in propounding h[er] decision.'" *Long John Silver's Rests., Inc. v. Cole*, 514 F.3d 345, 349 (4th Cir. 2008) (quoting *Remmey*, 32 F.3d at 149). This demanding standard reflects the limited role of courts reviewing arbitration awards. Manifest disregard "is not an invitation to review the merits of the underlying arbitration" and courts may not revisit the arbitrator's legal conclusions simply because they would

have reached a different result. *Wachovia Sec., LLC v. Brand*, 671 F.3d 472, 483 (4th Cir. 2012). Instead, the court's task is limited to determining "whether the arbitrators did the job they were told to do—not whether they did it well, or correctly, or reasonably, but simply whether they did it." *Three S Del., Inc.*, 492 F.3d at 527 (quoting *Remmey*, 32 F.3d at 146). Thus, even a perceived misapplication of the law cannot justify vacatur absent proof that the arbitrator consciously disregarded controlling authority. *Remmey*, 32 F.3d at 149.

Ms. Bell's Petition is premised on the notion that the Arbitrator should have applied a discovery-based equitable tolling doctrine tied to Ms. Bell's alleged inability to discover the alleged discriminatory nature of the termination decision until long after the decision had been made. (Petition, ¶ 4). However, the Arbitrator applied controlling Fourth Circuit precedent holding that the limitations period runs from the time the employee is informed of the allegedly discriminatory employment decision, not from the time the employee allegedly discovers a discriminatory motive. (Order on Motion to Dismiss at 10 (citing *Price*, 694 F.2d at 965)). Because Ms. Bell identifies no binding Fourth Circuit authority requiring application of her proposed "discovery-rule" theory and instead relies on non-binding authority from other jurisdictions, she cannot demonstrate either that the Arbitrator ignored controlling law or that binding precedent required a contrary result. Further, even if the Arbitrator misapplied or misunderstood the Fourth Circuit precedent, which she did not do, a reversal would nevertheless not be warranted. *Friedler*, 108 F.4th at 246 (internal citations omitted); *Constellium*, 18 F.4th at 743.

#### i. Ms. Bell Has Failed to Present Binding Precedent Requiring a Contrary Result from the Arbitrator's Decision.

As a threshold matter, Ms. Bell cannot establish the first element for vacatur based on manifest disregard: identifying a clearly defined, ***controlling*** legal principle that compelled a result contrary to the Arbitrator's decision. *See Warfield*, 26 F.4th at 670. Her Petition does not cite any

binding Fourth Circuit or Supreme Court authority requiring the Arbitrator to find her claims timely. (*See generally*, Petition). Instead, Ms. Bell argues that the Arbitrator should have applied a purported "discovery-rule" equitable tolling theory, which is unsupported by controlling precedent, based on her alleged inability to "discover the factual basis of her claim[s]." (Petition, ¶ 4).

In support of that theory, Ms. Bell principally relies on *Oshiver v. Levin, Fishbein, Sedran, & Berman*, 38 F.3d 1380 (3rd Cir. 1994) and *Rhodes v. Guiberson Oil Tools Division*, 927 F.2d 876 (5th Cir. 1991). (Petition, ¶ 24). Neither decision is controlling Fourth Circuit authority, and neither supports vacatur here.

*Oshiver* has been overruled and overturned in relevant part by subsequent Third Circuit authority. *Oshiver*'s presumption that the discovery rule applied to Title VII's Charge filing deadline was overruled in *Rotkiske v. Klemm*:

> In dictum in [*Oshiver*], we applied the discovery rule to Title VII, even though the statutory language required charges to be filed within 180 days 'after the alleged unlawful employment practice occurred' 42 U.S.C. § 2000e–5(e). The problem with *Rotkiske's* reliance on *Oshiver* is that its dictum is in obvious tension with the Supreme Court's decision in *TRW*. Instead of focusing on the statutory text (which we relegated to a footnote, 38 F.3d at 1385 n.3), we described a "general rule" that "the statute of limitations begins to run ... [on] the date on which the plaintiff discovers" an injury rather than "the date on which the wrong that injures the plaintiff occurs," *id*. at 1385 (emphasis in original). The Supreme Court's approach in *TRW* counsels in favor of reconsidering our earlier practice of presuming that federal statutes of limitations include an implied discovery rule. Indeed, to the extent that our decisions have relied on such a general presumption in applying a discovery rule to statutes that expressly begin to run when a violation 'occurs,' they cannot be reconciled with the Supreme Court's mandate that when "the text [of a statute] and reasonable inferences from it give a clear answer," that is "the end of the matter." *Brown v. Gardner*, 513 U.S. 115, 120, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994) (citations omitted). *See Oshiver*, 38 F.3d at 1385 (presuming applicability of discovery rule); *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 590 (3d Cir. 2005) (same, following *Oshiver*).

*Rotkiske v. Klemm*, 890 F.3d 422, 427–28 (3d Cir. 2018), *aff'd*, 589 U.S. 8, 140 S. Ct. 355, 205 L. Ed. 2d 291 (2019).

Ms. Bell's reliance on *Rhodes* is equally misplaced, as it is readily distinguishable. *Rhodes* is an equitable estopped case that involved materially misleading employer representations that allegedly caused Plaintiff's delay in filing EEOC Charge. *Rhodes* involved evidence that the employer's stated reduction-in-force explanation was false: the employer replaced the plaintiff and later advanced a materially different justification. *Rhodes*, 927 F.2d. at 879. *Rhodes* is inapposite because Petitioner expressly states in her Petition that she is not advancing an "equitable estoppel" argument "requiring proof of 'deliberate design' by Respondent," but rather "the analytically distinct doctrine of equitable tolling based on a claimant's inability to discover the factual basis of her claim." (Petition, ¶ 24). Because both cases are outside of the Fourth Circuit, neither case is binding on the Arbitrator or this Court. More importantly, neither case constitutes controlling Fourth Circuit authority capable of supporting a manifest-disregard claim. Ms. Bell's reliance on authority from other jurisdictions only underscores the absence of any binding precedent requiring the Arbitrator to adopt her position. That absence is fatal because manifest disregard requires a showing that controlling precedent dictated a contrary outcome. *Warfield*, 26 F.4th at 670.

By contrast, the Arbitrator grounded her decision in controlling authority. (*See generally* Order; Clarification Order). In concluding that Ms. Bell's discrimination claims were untimely, the Arbitrator relied on *Price* for the principle that the filing period begins when an employee is informed of the allegedly discriminatory decision, not when the effects of that decision are later felt, and on *Morgan* for the rule that discrete employment actions are separately actionable and must independently satisfy the applicable filing deadline. (Order at 9-10 (quoting *Price*, 694 F.2d at 965, and citing *Morgan*, 536 U.S. at 105, 113)).

Because Ms. Bell identifies no binding precedent compelling reversal of the Arbitrator's timeliness determination, she cannot satisfy the threshold requirement for manifest-disregard

review. Her disagreement with the Arbitrator's analysis, particularly her preference for non-binding authority from other jurisdictions, provides no basis for vacatur.

### ii. Ms. Bell Has Failed to Establish that the Arbitrator Knowingly Rejected Controlling Precedent.

Likewise, Ms. Bell cannot establish the second element for vacatur based on manifest disregard: the Arbitrator recognized controlling precedent, found it applicable, and nevertheless deliberately ignored it. *See Warfield*, 26 F.4th at 670. Ms. Bell fails to identify any controlling precedent that the Arbitrator was aware of, found applicable, and then consciously refused to follow. (*See generally*, Petition). To the contrary, the Arbitrator addressed Ms. Bell's timeliness arguments, her continuing violation theory, her equitable tolling theory, her discovery-based tolling theory, and her retaliation claim, and explained why each claim failed under governing Fourth Circuit law. (Order on Motion to Dismiss; Clarification Order).

The Arbitrator did not overlook or ignore Ms. Bell's tolling argument (even if Ms. Bell had cited controlling precedent in support of it, which she did not). When Ms. Bell sought clarification on that point, the Arbitrator expressly addressed and rejected her discovery-based theory as "unsupported by case law" – presumably the contrary case law provided by Cisco in its Reply brief and at oral argument (Clarification Order at 2). The Arbitrator then reaffirmed that Fourth Circuit precedent provided no basis for tolling the limitations period under the circumstances presented. (*Id.)* (citing *Price*, 694 F.2d at 965).

Significantly, Ms. Bell's own Petition acknowledges that "[t]he Arbitrator's June 20, 2026 Order demonstrates awareness of the equitable tolling framework" and that the Arbitrator "addressed the tolling questions directly and cited controlling Fourth Circuit authority." (Petition, ¶ 28). That admission alone defeats any claim that the Arbitrator manifestly disregarded the law,

as it confirms that the Arbitrator considered the precise legal issue Ms. Bell raises, analyzed it under controlling Fourth Circuit precedent, and rejected it on the merits.

Thus, this is not a case where the Arbitrator ignored controlling authority. It is a case where the Arbitrator considered Ms. Bell's argument, evaluated the authorities supplied by Cisco and the fact that Ms. Bell provided no authority in support of her argument, and concluded that controlling law required a different result. Accordingly, Ms. Bell's request for vacatur on this basis fails.

**iii. Thus, Ms. Bell Has Failed to Identify any Manifest Disregard of Law by the Arbitrator.**

"In this case, as in almost all manifest disregard cases, the sky-high standard of judicial review is the beginning and the end of our analysis." *Warfield*, 26 F.4th at 674. Ms. Bell has not met her heavy burden of demonstrating that the Arbitrator knew of and refused to heed controlling precedent. To the contrary, the Arbitrator's decision was a well-reasoned analysis of relevant and controlling case law and a sound application of the material facts to the law. (Order on Motion to Dismiss at 8-12; Clarification Order). While Ms. Bell would have the Court re-analyze the evidence, apply the non-controlling law of other jurisdictions, and review the Arbitrator's decision on the merits, this Court is not authorized to do so as a matter of well-established Fourth Circuit precedent. *See Wachovia*, 671 F.3d at 483.

**D. Ms. Bell Is Unable to Establish that the Arbitrator Refused to Hear Relevant Evidence.**

Under 9 U.S.C. § 10(a)(3), an arbitrator commits misconduct if she "refuses to hear evidence pertinent and material to the controversy." *Three S. Del., Inc.*, 492 F.3d at 530. Ms. Bell cannot satisfy that standard because the record demonstrates that the Arbitrator not only considered her evidence, but affirmatively provided Ms. Bell with an additional opportunity to present evidence after briefing on Cisco's Motion to Dismiss had already concluded. (Order on Motion to Dismiss at 6, n.4).

Clearly, if there was authority and evidence Ms. Bell wanted to submit in support of her discovery-rule theory or other arguments opposing Cisco's Motion to Dismiss, she had ample opportunity to submit them along with her Opposition to Cisco's Motion. That she failed to do so is not a basis for disturbing the Arbitrator's decision.

What's more, following oral argument on May 4, 2026, after briefing on the Motion to Dismiss was closed, the Arbitrator invited Ms. Bell to submit any ***additional*** documents she believed were relevant to her claims and/or arguments opposing Cisco's Motion to Dismiss. Ms. Bell thereafter submitted four separate documents for the Arbitrator's consideration: (1) her EEOC Charge; (2) the purported demand filed with the AAA; (3) an email exchange with EEOC Investigator Sandra Furey concerning mediation and the right-to-sue process; and (4) an email from EEOC Supervisor Jennifer Lane informing Ms. Bell that her prior inquiry did not constitute a charge of discrimination. (Order on Motion to Dismiss at 6, n.4). None of these documents supports Ms. Bell's discovery-rule theory.

The Arbitrator expressly acknowledged these documents in her Order and considered them before ruling on Cisco's Motion to Dismiss. (Order on Motion to Dismiss at 6, n.4). Ms. Bell therefore cannot credibly contend that the Arbitrator refused to hear evidence when the Arbitrator invited additional submissions beyond the parties' briefing and incorporated those materials into her analysis.

Nor can Ms. Bell demonstrate prejudice. This failure is independently fatal to Ms. Bell's § 10(a)(3) challenge. Even assuming, *arguendo*, that additional evidence existed, vacatur is unavailable absent a showing that the excluded evidence was material and that its exclusion substantially prejudiced the challenging party. 9 U.S.C. § 10(a)(3). None of the documents submitted by Ms. Bell established that her proposed "discovery-rule" tolling theory constituted

binding precedent in the Fourth Circuit. Likewise, none altered the undisputed dates on which the alleged adverse employment actions occurred or the date on which Ms. Bell filed her EEOC Charge. As the Arbitrator correctly concluded, "no factual dispute exists regarding the timing of the discrete adverse employment actions that form the basis of Claimant's claims" and "[n]o amount of discovery will change the dates these discrete events occurred." (Order on Motion to Dismiss at 10-11).

Furthermore, no amount of evidence regarding a purported discovery-rule theory can change Fourth Circuit precedent holding such a theory is unavailable for Ms. Bell's claims. Stated differently, even if Ms. Bell had evidence support her discovery-rule theory, such evidence would have been unavailing.

Ms. Bell's argument ultimately rests on her disagreement with the Arbitrators legal conclusions – which she cannot do - and not on any alleged refusal to consider evidence. The Federal Arbitration Act does not authorize vacatur merely because a party believes additional discovery might have strengthened her position. *See* 9 U.S.C. § 10(a). To the contrary, the record establishes that Ms. Bell was afforded a full and fair opportunity to present her evidence and arguments, that the Arbitrator considered those submissions, and that she then applied controlling Fourth Circuit law in reaching her decision.

Accordingly, Ms. Bell cannot establish misconduct under 9 U.S.C. § 10(a)(3), and vacatur is not warranted.

### E. Ms. Bell's Alternative Request for Remand and Her Ancillary Requests Provide No Basis for Relief.

Ms. Bell alternatively seeks remand for clarification. That request is moot. Ms. Bell already made this request of the Arbitrator in her Application for Clarification or Supplemental Order. (ECF No. 1-10). The Arbitrator's Clarification Order directly answered whether the Arbitrator had

considered Ms. Bell's discovery-rule theory, explained the applicable law relied upon, addressed Ms. Bell's asserted factual sequence, and stated that all arguments had been resolved. (Clarification Order, at 3) ("The undersigned Arbitrator has considered and resolved all the issues and arguments raised by the parties on this motion, including those not explicitly addressed herein. Any arguments not addressed here were found to be unavailing, without merit, academic, or unnecessary to reach."). No ambiguity remains for remand to cure.

Ms. Bell's discussion of public access does not advance any ground to vacate the Award. Cisco has not sought sealing relief in this Response. Ms. Bell's cited decision, *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 180–82 (4th Cir. 1988), concerns the procedural requirements governing an order to seal judicial records; it has no bearing on the validity of the Award.

Finally, Cisco does not seek attorneys' fees or costs through this Response. Ms. Bell's anticipatory request that the Court deny a hypothetical future request is therefore not ripe for adjudication.

## CONCLUSION

Because Ms. Bell has not established any of the narrow circumstances permitting the Court to set aside the Arbitrator's award, Cisco respectfully requests the Court enter an Order denying Ms. Bell's Petition to Vacate the Arbitration Award and affirming the Arbitrator's Award. Cisco further requests such other and further relief as the Court deems just and proper.

Dated: September 18, 2026

*/s/ Kellie A. Tabor*
Kellie A. Tabor, Bar No. 57153
ktabor@littler.com
LITTLER MENDELSON, P.C.
620 South Tryon Street, Suite 950
Charlotte, North Carolina 28202
Telephone: 704.972.7000
Facsimile: 704.333.4005

*Attorneys for Respondent*

## **WORD COUNT CERTIFICATION**

I, Kellie A. Tabor, certify that Respondent's Response in Opposition to Petitioner's Petition to Vacate Arbitration Award Pursuant to 9 U.S.C. § 10 complies with the word limitation as prescribed by Local Rule 7.2(f)(3). This brief does not exceed 8,400 words, exclusive of the caption, signature lines, certificate of service, any cover page or index, and this certificate.

September 18, 2026

*/s/ Kellie A. Tabor*

Kellie A. Tabor, Bar No. 57153
ktabor@littler.com
LITTLER MENDELSON, P.C.
620 South Tryon Street, Suite 950
Charlotte, North Carolina 28202
Telephone: 704.972.7000
Facsimile: 704.333.4005

*Attorneys for Respondent*

## CERTIFICATE OF SERVICE

I hereby certify that I have on this 18th day of September, 2026, filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:


Criselda Angela Bell
criselda.monteza@gmail.com
1232 Harp Street
Raleigh NC 27604

*Petitioner Pro Se*



*/s/ Kellie A. Tabor*
Kellie A. Tabor, Bar No. 57153
ktabor@littler.com
LITTLER MENDELSON, P.C.
620 South Tryon Street, Suite 950
Charlotte, North Carolina 28202
Telephone: 704.972.7000
Facsimile: 704.333.4005

*Attorneys for Respondent*