**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**RALEIGH**

| | |
|---|---|
| CRISELDA ANGELA BELL,<br><br>Petitioner,<br><br>v.<br><br>CISCO SYSTEMS, INC.,<br><br>Respondent. | Civil Action No. 5:26-CV-00555-M<br><br>**RESPONDENT'S RESPONSE IN OPPOSITION TO PETITIONER'S PETITION TO VACATE ARBITRATION AWARD PURSUANT TO 9 U.S.C. § 10** |

# EXHIBIT D

**JUDICIAL ARBITRATION AND MEDIATION SERVICES**
**Case No.: 5440009195**

| | | |
|---|---|---|
| **CRISELDA ANGELA BELL,**<br><br>*Claimant,*<br><br>v.<br><br>**CISCO SYSTEMS, INC.**<br><br>*Respondent*. | ) | **STATEMENT OF CLAIMS** |

## PARTIES

1. Claimant Criselda Angela Bell is a resident of North Carolina.
2. Respondent Cisco Systems, Inc. is a corporation with a principal place of business in North Carolina.

## STATEMENT OF FACTS

3. Claimant was employed by Respondent from March 2022 through September 9, 2025. She was hired in March 2022 with the title "Project Manager." In or around early 2024, her title was changed to "Business Development Manager." There was no change to her role, responsibilities, or compensation as a result of this title change
4. Prior to her full-time employment, Claimant worked as a contractor for Respondent from 2021 to 2022 through Experis.
5. In her role as Business Development Manager, Claimant led the Renewal Plays Program in a project management capacity.
6. In September 2023, Claimant received a 130% Individual Performance Factor bonus, demonstrating her strong job performance.
7. Claimant was never placed on a Performance Improvement Plan during her employment with Respondent.

8. In June 2023, Claimant informed her manager Lucy Shepherd of her intention to utilize Respondent's Fertility Program via Optum, noting she was approaching age 40 and wished to start a family.

9. In July 2023, Claimant documented via email that she connected with a Cisco Benefits Pro to discuss her fertility benefits.

10. In March 2024, Claimant verbally informed Lucy Shepherd that she had begun In Vitro Fertilization (IVF) and fertility treatments and would be unavailable for certain medical appointments.

11. Claimant disclosed her fertility treatments to several coworkers, including Kitty Cheeks and Ana Belda Chafer.

12. On April 30, 2024, Claimant sent Lucy Shepherd an email informing her that she had undergone surgery to remove polyps from her uterus in preparation for IVF. Claimant later verbally informed Lucy Shepherd that the surgery was specifically to prepare for embryo transfer by making her uterus hospitable for implantation.

13. On June 4, 2024, Claimant underwent embryo transfer.

14. Approximately ten days later, on or about June 14, 2024, Claimant learned that the embryo transfer was successful and she was pregnant.

15. Around May or June 2024, Claimant informed Lucy Shepherd that if the embryo transfer was successful, she would not formally announce a pregnancy due to personal superstition, though Lucy was aware the embryo transfer had occurred. Claimant did, however, inform two teammates, Kitty Cheeks and Taniya Shaikh, via chat and verbally, that she was already pregnant.

16. On August 9, 2024, Claimant publicly announced her pregnancy on Facebook.

17. Beginning in April 2024, following Claimant's disclosure of fertility treatments, colleague Erin Jurgens began inserting herself into the Renewal Plays Program despite holding a different role and reporting to another manager.

18. By late August 2024, colleague Ree Singh was assigned to assist in revamping the Renewal Plays Program.

19. On August 20, 2024, Erin Jurgens created a Webex space called "Renewals Planning Core."

20. By late August 2024, Claimant had been reduced to a support role in her own program, with Erin Jurgens and Ree Singh assuming primary control.

21. Claimant felt systematically pushed out of her program following her fertility treatment disclosure.

22. On September 16, 2024, Claimant was notified via Webex call with Lucy Shepherd that she was being laid off effective November 15, 2024.

23. At the time of the layoff notification, Claimant was approximately three months pregnant.

24. Claimant identified approximately two to four other Business Development Managers or Program Managers who were not laid off and remained employed by Respondent.

25. These retained Business Development Managers were hired years before Claimant and had been with Respondent for a significant period of time.

26. On September 27, 2024, Claimant's OB-GYN, Dr. Rachel Fitchett of Wilkerson OB GYN Raleigh, recommended immediate leave of absence due to high anxiety, severe stress, and high-risk pregnancy.

27. Claimant was prescribed anti-depressants and referred to Seven Starling for therapy.

28. Claimant was placed on disability leave from September 29, 2024, until delivery on February 6, 2025.

29. The disability approval was limited to six-week increments with no guarantee of renewal, leaving Claimant in constant uncertainty regarding paid maternity leave.

30. In May 2025, Claimant discovered via LinkedIn that a comparator employee, Dana Van Curen, had received fully paid maternity leave extending her employment by six months.

31. Dana Van Curen is a white woman under 40 years of age who was further along in her pregnancy at the time of the layoff.

32. Dana Van Curen received fully paid maternity leave because her due date fell within the 60-day exit window following her layoff notification.

33. Claimant was initially informed by Samira Haddad of Cisco HR that she was only eligible for paid maternity leave if still employed at Cisco at the time of her delivery in February 2025, which was after her original exit date of November 15, 2024. While COBRA coverage was offered until her baby was six months old, Claimant was told that taking a leave of absence (LOA) could pause her exit date, dependent on doctor approval. Claimant eventually received paid maternity leave and insurance coverage, but only after navigating repeated approvals and renewing disability every six weeks, causing significant stress during her pregnancy.

34. Respondent informed Claimant that since her due date was after her exit date, she was not entitled to the same benefit, citing "policy."

35. Claimant is a woman of color, specifically Filipino, and a first-generation immigrant.

36. Claimant was 40 years old at the time of the alleged discrimination.

37. Claimant was actively petitioning for her mother's green card, with her mother's interview scheduled at the U.S. Embassy in Manila in February 2025.

38. As the financial sponsor, Claimant's termination in November 2024 would have resulted in denial of the green card petition.

39.This jeopardized both Claimant's plans to bring her mother to the United States and her ability to secure necessary family support after delivery.

40.Claimant experienced severe stress, mental anguish, humiliation, and hopelessness as a result of Respondent's conduct.

41.Claimant Characterizes Respondent's policy as a "pregnancy timing lottery" that unfairly disadvantages pregnant employees whose due dates fall outside the 60-day exit window.

42.On July 25, 2025, Claimant filed an internal discrimination complaint with Respondent alleging intersectional discrimination and requesting an enhanced severance package.

43.On September 8, 2025, after internal investigation, Respondent denied any wrongdoing and cited "policy."

44.Claimant was terminated on September 9, 2025.

45.Claimant signed a severance agreement and subsequently revoked her signature on September 15, 2025, within the 7-calendar-day revocation period.

46.Respondent acknowledged Claimant's revocation request on September 15, 2025.

47.On September 22, 2025, Claimant filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC), Charge No. 433-2025-04606.

48.The EEOC charge alleged discrimination based on age, disability, pregnancy, race, and sex.

49.On September 30, 2025, the EEOC issued a Right to Sue notice, dismissing the charge without proceeding further with investigation and making no determination on the merits.

50.The EEOC Right to Sue notice granted Claimant the right to file a private lawsuit in federal or state court within 90 days of receipt of the dismissal notice.

## COUNT ONE

### Discrimination (Sex and Pregnancy)

51.Claimant is a member of a protected class as a pregnant woman.

52. Claimant was pregnant at the time of her layoff notification on September 16, 2024, and her child was approximately seven months old at the time of her termination on September 9, 2025.

53. Claimant disclosed her fertility treatments to her manager in March 2024. Around May or June 2024, she informed her manager that if the embryo transfer was successful, she would not formally announce a pregnancy due to personal superstition, though her manager was aware that the embryo transfer had occurred.

54. Claimant was qualified for her position as Business Development Manager.

55. Claimant received a 130% Individual Performance Factor bonus in September 2023.

56. Claimant was never placed on a Performance Improvement Plan.

57. Claimant led the Renewal Plays Program in a project management capacity.

58. Claimant suffered adverse employment actions, including being systematically sidelined from her program, being laid off, and being terminated.

59. Beginning in April 2024, following Claimant's disclosure of fertility treatments, Erin Jurgens began inserting herself into Claimant's Renewal Plays Program.

60. By late August 2024, Claimant had been reduced to a support role in her own program.

61. On September 16, 2024, Claimant was notified of her layoff effective November 15, 2024.

62. Claimant was terminated on September 9, 2025.

63. Claimant was treated less favorably than similarly situated non-pregnant employees.

64. Colleagues Ree Singh and Erin Jurgens, who assumed control of Claimant's program, were not laid off and remained employed.

65. Dana Van Curen, a white woman under 40 who was also laid off while pregnant, received fully paid maternity leave, extending her employment by six months.

66. Claimant initially received only COBRA continuation coverage and faced obstacles in obtaining paid maternity leave. She ultimately received paid maternity leave after

navigating repeated approvals and administrative hurdles, whereas another employee, received paid leave without such difficulties.

67. The adverse employment actions were motivated by Claimant's pregnancy.

68. The temporal proximity between Claimant's disclosure of fertility treatments in March 2024 and the systematic sidelining beginning in April 2024 demonstrates discriminatory motivation.

69. The temporal proximity between Claimant's pregnancy announcement in late July and August 2024 and her layoff notification on September 16, 2024, demonstrates discriminatory motivation.

70. Respondent’s stated reason for the disparate treatment in maternity leave benefits was "policy."

71. This policy functions as a pregnancy timing lottery that discriminates based on when the pregnancy due date falls relative to the exit period.

72. Respondent’s policy treats pregnant employees differently based on the timing of their pregnancies, which constitutes pregnancy discrimination.

73. Respondent’s stated reason for the adverse actions was pretextual.

74. Claimant's non-pregnant colleagues who assumed her responsibilities were retained while Claimant was laid off.

75. The retention of employees who took over Claimant's program demonstrates that Claimant's position was not eliminated due to legitimate business necessity.

76. As a direct and proximate result of Respondent’s discriminatory conduct, Claimant has suffered damages including lost wages, lost benefits, emotional distress, mental anguish, humiliation, and damage to her professional reputation.

## COUNT TWO

### Discrimination (Age)

77. Claimant is a member of a protected class as an individual 40 years of age or older.

78. Claimant was born in 1984 and was 40 years old at the time of the alleged discrimination in 2024 and 2025.

79. Claimant was qualified for her position as Business Development Manager.

80. Claimant received a 130% Individual Performance Factor bonus in September 2023.

81. Claimant was never placed on a Performance Improvement Plan.

82. Claimant led the Renewal Plays Program in a project management capacity.

83. Claimant suffered adverse employment actions, including being laid off and terminated.

84. Approximately two to four other Business Development Managers/Program Managers were not laid off and remained employed by Respondent. These employees were hired years before Claimant and had been with Respondent for a significant period of time.

85. The disparate treatment in maternity leave benefits between Claimant (age 40+) and Dana Van Curen (under 40) demonstrates age-based discrimination.

86. Respondent's stated reason for the adverse actions was pretextual.

87. Claimant's satisfactory job performance, as evidenced by her 130% bonus, demonstrates that age was a motivating factor in the layoff decision.

88. As a direct and proximate result of Respondent's discriminatory conduct, Claimant has suffered damages, including lost wages, lost benefits, emotional distress, mental anguish, humiliation, and damage to her professional reputation.

## COUNT THREE

### Discrimination (Disability)

89. Claimant has a disability within the meaning of the Americans with Disabilities Act (ADA).

90. On September 27, 2024, Claimant's OB-GYN, Dr. Rachel Fitchett, recommended immediate leave of absence due to high anxiety, severe stress, and high-risk pregnancy.

91. Claimant was prescribed anti-depressants and referred to therapy with Seven Starling.

92. Claimant was placed on disability leave from September 29, 2024, until delivery on February 6, 2025.

93. Claimant's pregnancy-related complications, including high anxiety and severe stress, substantially limited her major life activities.

94. Reproductive functions constitute a major bodily function under the ADA Amendments Act of 2008.

95. Respondent regarded Claimant as having a disability, as evidenced by the placement on disability leave and the involvement of a Benefits Pro to discuss accommodations.

96. Claimant was qualified to perform the essential functions of her job with or without reasonable accommodation.

97. Claimant received a 130% Individual Performance Factor bonus in September 2023.

98. Claimant was never placed on a Performance Improvement Plan.

99. Claimant successfully led the Renewal Plays Program prior to being sidelined.

100. Claimant suffered adverse employment actions, including being laid off and terminated.

101. On September 16, 2024, Claimant was notified of her layoff while pregnant and experiencing pregnancy-related complications.

102. Claimant was terminated on September 9, 2025.

103. The adverse employment actions were motivated by Claimant's disability.

104. The temporal proximity between Claimant's disclosure of pregnancy-related health concerns and her layoff demonstrates discriminatory motivation.

105. Colleagues Ree Singh and Erin Jurgens, who did not have known disabilities, were retained and not affected by the layoff.

106. Respondent’s stated reason for the adverse actions was pretextual.

107. The retention of non-disabled employees who assumed Claimant's responsibilities demonstrates that disability was a motivating factor in the layoff decision.

108. As a direct and proximate result of Respondent’s discriminatory conduct, Claimant has suffered damages including lost wages, lost benefits, emotional distress, mental anguish, humiliation, and damage to her professional reputation.

## COUNT FOUR

### Failure to Provide Reasonable Accommodations

109. Claimant is a qualified employee.

110. Claimant received a 130% Individual Performance Factor bonus in September 2023.

111. Claimant was never placed on a Performance Improvement Plan.

112. Claimant successfully led the Renewal Plays Program.

113. Claimant has a known limitation related to pregnancy, childbirth, or a related medical condition.

114. Claimant disclosed her fertility treatments to her manager Lucy Shepherd in March 2024.

115. Claimant did not disclose to Lucy Shepherd that she was already pregnant. Around May or June 2024, she informed Lucy that if the embryo transfer was successful, she would not formally announce a pregnancy due to personal superstition, though Lucy was aware that the embryo transfer had occurred.

116. On September 27, 2024, Claimant's OB-GYN recommended immediate leave of absence due to high anxiety, severe stress, and high-risk pregnancy.

117. Claimant's known limitations related to pregnancy included high anxiety, severe stress, and high-risk pregnancy.

118. Respondent knew or reasonably should have known of the limitation.

119. During the layoff notification call on September 16, 2024, Lucy Shepherd acknowledged that she had suspected Claimant was already pregnant, based on preparations for the embryo transfer months earlier.

120. Lucy Shepherd mentioned that a Benefits Pro would contact Claimant regarding maternity leave.

121. Respondent was aware of Claimant's pregnancy-related health concerns when Dr. Fitchett recommended leave on September 27, 2024.

122. Respondent failed to provide a reasonable accommodation.

123. Paid maternity leave constitutes a reasonable accommodation for pregnancy-related limitations.

124. Respondent provided paid maternity leave to Dana Van Curen, whose due date fell within the 60-day exit window.

125. Respondent initially provided only COBRA coverage and did not guarantee paid maternity leave because Claimant’s due date fell after her original exit period.

126. The delay and administrative hurdles in securing these benefits caused significant stress and hardship for Claimant during her pregnancy.

127. Claimant eventually received paid maternity leave and insurance coverage after navigating repeated approvals and renewing disability every six weeks until giving birth, with no guarantee of approval at each renewal.

128. This process created unnecessary financial and emotional strain, whereas another employee received leave without facing such obstacles.

129. Claimant experienced severe stress, mental anguish, and financial hardship as a result of the denial of paid maternity leave.

130. Claimant's ability to sponsor her mother's green card petition was jeopardized due to loss of employment and financial sponsorship status.

131. As a direct and proximate result of Respondent's failure to provide reasonable accommodations, Claimant has suffered damages including lost wages, lost benefits, emotional distress, mental anguish, and financial hardship.

## COUNT FIVE

### Discrimination (Race)

132. Claimant is a member of a protected class as a woman of color.

133. Claimant is Filipino and a first-generation immigrant.

134. Claimant was qualified for her position as Business Development Manager.

135. Claimant received a 130% Individual Performance Factor bonus in September 2023.

136. Claimant was never placed on a Performance Improvement Plan.

137. Claimant led the Renewal Plays Program in a project management capacity.

138. Claimant suffered adverse employment actions, including being laid off and terminated.

139. On September 16, 2024, Claimant was notified of her layoff effective November 15, 2024.

140. Claimant was terminated on September 9, 2025.

141. Claimant was treated less favorably than similarly situated employees who are not members of the protected class.

142. Dana Van Curen, a white woman under 40, received fully paid maternity leave extending her employment by six months.

143. Claimant, a woman of color, was denied the same paid maternity leave benefit.

144. The adverse employment actions were motivated by Claimant's race.

145. The disparate treatment in maternity leave benefits between Claimant (woman of color) and Dana Van Curen (white woman) demonstrates race-based discrimination.

146. Claimant alleges that the disparate treatment was based on her intersectional identity as a woman of color, an older woman, and a pregnant woman.

147. Respondent's stated reason for the adverse actions was pretextual.

148. The provision of paid maternity leave to a white employee while denying the same benefit to a woman of color demonstrates that race was a motivating factor.

149. As a direct and proximate result of Respondent's discriminatory conduct, Claimant has suffered damages including lost wages, lost benefits, emotional distress, mental anguish, humiliation, and damage to her professional reputation.

## COUNT SIX

### Retaliation

150. Claimant engaged in protected activity.

151. Claimant opposed discriminatory practices by filing an internal discrimination complaint with Respondent on July 25, 2025.

152. In her internal complaint, Claimant alleged intersectional discrimination and requested an enhanced severance package.

153. Claimant filed an EEOC charge on September 22, 2025, alleging discrimination based on age, disability, pregnancy, race, and sex.

154. Claimant's disclosure of her pregnancy and fertility treatments to management constitutes protected activity as opposition to potential discrimination.

155. Respondent knew of the protected activity.

156. Respondent received Claimant's internal discrimination complaint on July 25, 2025.

157. Respondent conducted an internal investigation in response to Claimant's complaint.

158. On September 8, 2025, Respondent denied Claimant's complaint and cited "policy."

159. Claimant was subjected to an adverse employment action.

160. Claimant was terminated on September 9, 2025, one day after Respondent denied her internal discrimination complaint.

161. The adverse employment action was motivated by the protected activity.

162. The temporal proximity between Claimant's internal complaint on July 25, 2025, and her termination on September 9, 2025, suggests retaliatory motivation.

163. The temporal proximity between Respondent's denial of Claimant's complaint on September 8, 2025, and her termination on September 9, 2025, strongly suggests retaliatory motivation.

164. Claimant's earlier protected activities, including disclosing her pregnancy and opposing the disparate treatment in maternity leave benefits, may have motivated the adverse employment actions of sidelining and layoff.

165. Respondent's stated reason for the adverse action was pretextual.

166. The timing of Claimant's termination immediately following the denial of her internal complaint demonstrates retaliatory intent.

167. As a direct and proximate result of Respondent's retaliatory conduct, Claimant has suffered damages including lost wages, lost benefits, emotional distress, mental anguish, humiliation, and damage to her professional reputation.

## PRAYER FOR RELIEF

WHEREFORE, Claimant respectfully requests:

A. Compensatory damages against Respondent for lost wages and health insurance coverage beginning September 2025 and continuing through the present, as Claimant remains unemployed. From September 2024 through September 2025, while on disability and remaining on payroll, Claimant was prevented from participating in the Employee Stock Purchase Program, and her RSUs stopped vesting.

B. Compensatory damages against Respondent for mental anguish and emotional distress caused by the stress and uncertainty during Claimant's pregnancy, including navigating repeated approvals for paid maternity leave and disability renewals.

C. Compensatory damages against Respondent for damage to professional reputation and career advancement opportunities.

D. Punitive damages against Respondent as Respondent's conduct was willful, reckless, and in bad faith.

E. Prospective injunctive relief requiring Respondent to modify its maternity leave policy to eliminate pregnancy-timing-based discrimination.

F. Reasonable attorney's fees and litigation costs.


/s/Amina M. Mack, Esq.
Amina M. Mack (NCSB No. 61390)
**THE MACK LAW FIRM, PLLC**
4242 Six Forks Road, Ste. 1550
Raleigh, NC 27609
Tel: 984-480-7147
legal@themacklaw.com

Attorney for Claimant

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing has been served via email to the counsel of record on February 20, 2026.

Kelly Walker
Littler
620 South Tryon Street, Suite 950
Charlotte, NC 28202
KeWalker@littler.com

Kellie Tabor
Littler
620 South Tryon Street, Suite 950
Charlotte, NC 28202
KTabor@littler.com

Attorneys for Respondent

/s/Amina M. Mack, Esq.
Amina M. Mack (NCSB No. 61390)
**THE MACK LAW FIRM, PLLC**
4242 Six Forks Road, Ste. 1550
Raleigh, NC 61390
Tel: 984-480-7147
legal@themacklaw.com
Attorney for Claimant