**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**RALEIGH**

| | |
|---|---|
| CRISELDA ANGELA BELL,<br><br>Petitioner,<br><br>v.<br><br>CISCO SYSTEMS, INC.,<br><br>Respondent. | Civil Action No. 5:26-CV-00555-M<br><br>**RESPONDENT'S RESPONSE IN OPPOSITION TO PETITIONER'S PETITION TO VACATE ARBITRATION AWARD PURSUANT TO 9 U.S.C. § 10** |

# EXHIBIT E

**JAMS ARBITRATION**

| | |
|---|---|
| CRISELDA ANGELA BELL,<br><br>Claimant,<br><br>v.<br><br>CISCO SYSTEMS, INC.,<br><br>Respondent. | REF NO. 5440009195 |

**RESPONDENT'S REPLY IN FURTHER SUPPORT OF ITS MOTION TO DISMISS**

Respondent Cisco Systems, Inc. ("Respondent" or "Cisco"), by and through its attorneys, Littler Mendelson, P.C., files the following Reply in further Support to its Response to Claimant's Statement of Claims and Motion to Dismiss (hereinafter referred to as "Respondent's Motion").

## I. INTRODUCTION

Claimant's contention that Respondent's Motion is premature or contradicted by documentary evidence has no bearing on the dispositive grounds supporting dismissal. The grounds for dismissal rest entirely on legal arguments, not on any disputed facts. Whether Claimant's claims should be dismissed due to her failure to exhaust administrative remedies and untimely filings are preliminary legal questions related to the statute of limitations, which are based on the allegations in Claimant's own Statement of Claims and which do not require further discovery or rely on disputed material facts. Thus, the majority of Claimant's arguments and factual objections in her Response in Opposition to Respondent's Motion to Dismiss ("Claimant's Response") are immaterial.

Notably, in Claimant's Response, Claimant does not dispute Respondent's ability to file a Motion to Dismiss/dispositive motion under the JAMS Employment Arbitration Rules and Procedures ("JAMS"), that each of the claims asserted in her Statement of Claims are federal employment claims under Title VII, the ADEA, the ADA, and the PWFA, which are subject to the

180-day EEOC Charge filing deadline and 90-day civil filing deadline, or that the Federal Rules of Civil Procedure and federal case law govern Respondent's Motion. Because each of Claimant's claims are untimely and/or she has failed to exhaust them, they must be dismissed as a matter of law, and Respondent's Motion should be granted.

## II. ARGUMENT

### A. The Basis for Claimant's Termination is Not Pertinent in Assessing Timeliness of Her EEOC Charge.

The Company's stated reason for Claimant's termination has no relevance to the statute of limitations governing the filing of an EEOC Charge, and does not create a dispute of fact that would provide a basis to deny Respondent's Motion.[1]

Claimant contends that the stated basis for her termination is materially inaccurate and therefore the notice of her termination provided to her "cannot be clear and unequivocal." (Claimant's Response, p. 3.) Yet, Claimant offers no basis to support the notion that the proffered termination reason bears any relevance to the timeliness analysis. Further, she does not provide any legal support for her contention that the standard for a notice of termination to be the applicable trigger for the 180-day Charge filing deadline is that the notice must be "clear and unequivocal," nor can any be located.

The Fourth Circuit has made clear that the 180-day limitations period for an alleged action of discrimination arising out of a job termination commences when the employee is informed of the termination decision. *Price v. Litton Bus. Sys., Inc.*, 694 F.2d 963, 965 (4th Cir. 1982); *see also Olson v. Mobil Oil Corp.*, 904 F.2d 198, 200 (4th Cir. 1990) ("The 180-day limitations period for an ADEA action arising out of a job termination commences when the employee is informed of

[1] Respondent notes that the "dispute of material fact" standard referenced by Claimant in her Response is applicable to a Motion for Summary Judgment, not a Motion to Dismiss. Regardless, no dispute of ***material*** fact exists here preventing the Arbitrator from granting Respondent's Motion.

his termination."). This is true even if the claimant is not then aware of its discriminatory nature. *Olson*, 904 F.2d at 200 (citing *Felty v. Graves-Humphreys Co.*, 785 F.2d 516, 518-19 (4th Cir. 1986)). The doctrine of equitable tolling only applies when an "employee's failure to timely file results from either a 'deliberate design by the employer or actions that the employer should unmistakably have understood would cause the employee to delay filing his charge.'" *Id*., at 201 (quoting *Price*, 694 F.2d at 965).

Claimant's awareness of the relevant facts is unmistakable. Claimant asserts that she informed management of her fertility treatments as early as March 2024. (*Id*., ¶ 53.) Further, she alleges she was "systematically sidelined from her program" beginning April 2024 and reduced to a support role in her own program by August 2024. (*Id*., ¶¶ 58-60.) On September 16, 2024, the Company notified Claimant of her layoff effective November 15, 2024. (*Id*., ¶ 61.) Claimant argues that the adverse employment actions were motivated by her pregnancy and demonstrate discriminatory motivation. (*Id*., ¶¶ 67–69.) Regardless of the basis of Claimant's termination, it is undisputed that the Company informed Claimant of the decision to terminate her employment on September 16, 2024. (*Id*., ¶ 61.) Claimant even alleges that the temporal proximity between her pregnancy announcement in late July and August 2024 and her layoff notification on September 16, 2024 demonstrates discriminatory motive. (*Id*., ¶ 68.) Thus, as the Court reasoned in *Olson*, it hardly seems equitable to toll a limitations period when claimant possessed the information needed to file a timely discrimination charge. *Olson*, 904 F.2d at 201; *Blumberg v. HCA Management Co*., 848 F.2d 642, 644 (5th Cir. 1988) ("The very basis for equitable tolling is plaintiff's unawareness of the facts giving rise to the claim because of the defendant's intentional concealment of them."). Claimant failed to file a Charge within 180-days after the alleged "sidelining" occurrences and after she received notice that her employment will be terminated.

Thus, Claimant's federal discrimination and retaliation claims are untimely and must be dismissed.

### B. **Respondent's Failure to Reconsider the Decision to Terminate Claimant's Employment Does Not Create a Separate Adverse Employment Action.**

Claimant tries to categorize her termination in September 2025 as a separate adverse employment action. However, it is not.

The Company notified Claimant of her inclusion in the layoff on September 16, 2024, with an effective termination date of November 15, 2024, following a 60-day transition period. (Statement of Claims, ¶ 22.) The Company's policy is to honor a medical leave of absence and delay the 60-day transition period and effective date of termination until the leave of absence concludes. Claimant was on disability leave from September 29, 2024 through the birth of her child on February 6, 2025. (*Id.*, ¶ 28.) Subsequently, Claimant was on paid childbirth disability leave and child bonding leave. (*Id.*, ¶¶ 29, 33.) Upon return form leave, and after the completion of the 60-day transition period, Claimant's employment was terminated effective September 9, 2025. (*Id.*, ¶ 44.)

Although it is not included in her Statement of Claims, Claimant now claims in her Response that Respondent's failure to reconsider her layoff in July-September 2025, is a separate, timely adverse employment action. (Claimant's Response, p. 5.) However, the failure to reconsider what otherwise may be an adverse employment action is not a separate adverse employment action. *Walker v. Charlotte-Mecklenburg Schs.*, 2009 U.S. Dist. LEXIS 105237, at *13 (W.D.N.C. Nov. 9, 2009) (granting Defendant's Motion to Dismiss and holding Plaintiff cannot establish that the decision to uphold her termination was an adverse employment action, a necessary element to any claim of retaliation under federal or state law).

Thus, the Company's failure to reconsider Claimant's inclusion in the layoff, originally decided in September 2024, does not constitute a separate adverse employment action.

### C. **The Continuing Violation Theory Does Not Apply to Discrete Acts of Discrimination and, Regardless, Claimant Does Not Allege Any Timely Viable Adverse Employment Acts.**

Claimant's argument that the continuing violation doctrine should apply is misplaced. The continuing violation theory allows for consideration of incidents that occurred outside the time bar when those incidents are part of a single, ongoing pattern of discrimination, when the incidents make up part of a hostile work environment claim. *Mulugu v. Duke Univ*., 2026 U.S. Dist. LEXIS 8766, *20 (M.D.N.C., Jan. 16, 2026); *Holland v. Washington Homes, Inc*., 487 F.3d 208, 219 (4th Cir. 2007) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 118, 122 S. Ct. 2061, 153 L.Ed. 2d 106 (2002)). However, this continuing violation exception is inapplicable because Claimant did not plead a hostile work environment claim. *Morgan*, 536 U.S. at 115 (holding discrete discriminatory acts are not actionable if time-barred, even when they are related to acts alleged in timely filed charges). The Supreme Court specifically cabined the continuing violation doctrine's use to hostile work environment claims and squarely prohibits the use of it for discrete discriminatory acts. (*Id*., at 122.)

As Claimant only alleges discrete claims of discrimination and retaliation, the continuing violation theory does not apply.

And, regardless, Claimant's Statement of Claims does not identify any viable adverse employment actions within the 180-day window of her September 22, 2025 Charge. The only alleged adverse employment actions within that window in either Claimant's Statement of Claims or Claimant's Response are (a) the effectuated termination of her employment, which, as outlined in Section II.A above, is not the proper date for measuring the timeliness of Claimant's Charge when she was notified of the decision over a year prior; and (b) Respondent's declination to

reconsider its layoff decision following Claimant's internal complaint, which, as outlined in Section II.B above, is not a separate adverse employment action as a matter of law.

Accordingly, because the continuing violation theory does not apply to Claimant's claims of discrete discriminatory/retaliatory acts, and because, regardless, she does not allege any viable, timely adverse employment actions, each of her claims is untimely and should be dismissed.

### D. It is Immaterial that Claimant Claims She Did Not Discover Any Alleged Discriminatory/Retaliatory Motive Until May 1, 2025.

Claimant attempts to save her untimely claims by asserting that her EEOC Charge filing deadline should begin on the date she allegedly learned that a coworker received more favorable treatment than she. (Claimant's Response, p. 6.) Claimant cites no case law in support of her "discovery theory," which does not render her claims timely under applicable law.

Importantly, "it is 'notice of the employer's actions, not the notice of a discriminatory effect or motivation, that establishes the commencement of the pertinent filing period.'" *Oldham v. Univ. of N. Carolina*, No. 1:22cv513, 2023 WL 3984031, at *7 (M.D.N.C. Jun. 13, 2023) (quoting *Hamilton v. 1st Source Bank*, 928 F.2d 86, 89 (4th Cir. 1990)). In a discriminatory/retaliatory discharge case, the 180-day deadline is counted "from either the time of discharge or from the moment the employee received advanced notice of the pending discharge." *Id.* at *7. "[L]ack of knowledge of the discriminatory nature of an employment decision and the reasons for that lack of knowledge … play no part in determining the beginning of the statutory limitations period." *Id.* (citing *Felty v. Graves-Humphreys Co.*, 785 F.2d 516, 519 (4th Cir. 1986)).

Accordingly, it is immaterial that Claimant allegedly did not discover the alleged discriminatory/retaliatory nature of the decision to include her in the layoff until May 2025, and her claims remain untimely and should be dismissed.

## E. <u>Claimant's Response Confirms She Did Not File Her Arbitration Demand Within 90 Days of Receiving the EEOC Right to Sue Notice, and Thus, it is Untimely.</u>

### 1. Respondent's Minor Typographical Error is Not a Basis to Excuse Claimant from Her Filing Deadline.

Claimant attempts to use a typographical error in Respondent's Motion as a defense to her untimely filing of her Demand for Arbitration. (Claimant's Response, pp. 7-8.) Respondent acknowledges it inadvertently stated that Claimant did not file any demand for arbitration until January 23, 2025, where it should be read January 23, 2026. (Respondent's Motion, p. 9.) However, the typographical error is clearly understood as the preceding sentence states Claimant received the EEOC Right-To-Sue Notice on September 30, 2025, and the deadline to initiate her action and file her demand for arbitration was December 29, 2025. (*Id.*) But more importantly, Claimant ignores footnote 7, which correctly reads, "Claimant demanded arbitration with JAMS on Friday, January 23, 2026. Claimant did not file a Statement of Claims until February 20, 2026. However, even utilizing the initial notice date of January 23, 2026, for the purposes of this Motion, the filing is still untimely (115 days after the notice of right to sue)." (*Id.*, p. 9 fn 7.)

Claimant nonsensically argues that this typographical error is an "internal contradiction [which] calls into question the reliability of Respondent's timeline and undermines the credibility of its timeliness arguments." (Claimant's Response, p. 8.) Yet, Claimant fails to provide an alternative filing date or dispute that Respondent's cited date of January 23, 2026 is the correct date by which to determine whether Claimant timely filed her Demand for Arbitration. Claimant does not claim she, in fact, timely filed her Demand for Arbitration on an earlier date, or provided any evidence she filed a Demand for Arbitration prior to her December 29, 2025 deadline.

### 2. The Arbitration Agreement's Language is Not Vague and, Regardless, is Likewise Not a Basis to Excuse Claimant from Her Filing Deadline.

Next, Claimant attempts to argue that the Arbitration Agreement's language is vague and contributed to her delay in filing her Demand for Arbitration with JAMS. (Claimant's Response, p. 8.) Claimant alleges she initially filed with the American Arbitration Association ("AAA") within the 90-day statutory period, though she does not indicate on what day she allegedly filed a Demand for Arbitration with the AAA, nor did Respondent receive service of one. (*Id.*)

The Arbitration Agreement states the arbitration will be administered by JAMS and the arbitration shall take place either at the JAMS office closest to where Claimant lives, or the JAMS office closest to the Company office where Claimant last worked for the Company. (*See*, Arbitration Agreement, p. 1). Further, it provides, "[i]f JAMS does not have an office close to where I live or the Company office where I work or last worked, then the arbitration will be administered by a retired judge of the American Arbitration Association, using the JAMS Rules." (*Id.*)

Nothing about this language is ambiguous or excuses Claimant's late filing. Claimant has provided no support for her contention that she timely filed with AAA or provided the date she allegedly filed a Demand for Arbitration with the AAA. Additionally, Respondent never received any information or confirmation that Claimant filed a Demand for Arbitration with AAA on or prior to her December 29, 2025 filing deadline.

Therefore, because Claimant has not alleged she timely filed a Demand for Arbitration with either JAMS or AAA within her 90-day filing deadline, Claimant's filing for Arbitration is untimely and her claims should be dismissed on this additional basis.

### F. <u>Claimant's Retaliation Claim Was Not Properly Exhausted.</u>

Claimant's argument that the Respondent was placed on notice of a retaliation claim, and thus she has properly exhausted it, is without merit.

The content of Claimant's EEOC Charge defines the scope of her litigation. *Smith v. First Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000) (holding a "plaintiff's EEOC charge defines the scope of her subsequent right to institute a civil suit."). Claimant's assertion that Respondent was placed on notice of a retaliation claim is baseless. Claimant states she provided the EEOC investigator with information regarding her internal discrimination complaint and termination. (Claimant's Response, pp. 4-5.) However, that does not support the contention that Respondent was placed on notice, as Respondent is not privy to the information Claimant provided the EEOC during the intake process. Moreover, Respondent cannot access Claimant's additional EEOC submissions through a FOIA request absent a pending lawsuit.[2] Claimant contends that the sequence of her internal complaint, its subsequent denial, and her termination shortly thereafter, establishes a clean pattern of retaliation. (*Id*., p. 5.) Yet, none of this was referenced in the EEOC Charge signed and dated by the Claimant on September 22, 2025, and provided to Respondent. (Statement of Claims, ¶¶ 48, 153.) Even Claimant's Statement of Claims acknowledges that her Charge ***<u>only</u>*** alleges discrimination based on age, disability, pregnancy, race, and sex; but not retaliation. (*Id*.)

---

[2] Freedom of Information Act | U.S. Equal Employment Opportunity Commission (A respondent can request a copy of a charge file only after the charging party has filed a lawsuit against it in federal or state court.)

As Claimant failed to raise any claim of retaliation in her underlying EEOC Charge, the retaliation claim should be dismissed for Claimant's failure to exhaust her administrative remedies with respect to any federal retaliation claim.[3]

## III. CONCLUSION

For the reasons set forth above, and in Respondent's Motion to Dismiss, Respondent respectfully requests that the Arbitrator enter an Order dismissing Claimant's Statement of Claims and Demand for Arbitration with prejudice in its entirety.

Dated: March 25, 2026

*<u>/s/ Kellie A. Tabor</u>*

Kellie A. Tabor, Bar No. 57153
ktabor@littler.com
Kelly Walker, Bar No. 49535
KeWalker@littler.com
LITTLER MENDELSON, P.C.
620 South Tryon Street, Suite 950
Charlotte, North Carolina 28202
Telephone: 704.972.7000
Facsimile: 704.333.4005

*Attorneys for Respondent*

[3] Claimant's Response also addresses Respondent's Affirmative and Other Defenses and Request for Attorneys' Fees, which are included in the same document as Respondent's Motion to Dismiss. Respondent included its statement of defenses and request for relief in its Response to streamline the filings, and does not waive its right to continue to assert the affirmative and other defenses included in Respondent's Motion, should this Arbitrator not grant Respondent's Motion to Dismiss in its entirety, or to seek attorneys' fees.

## CERTIFICATE OF SERVICE

This is to certify that on March 25, 2026, a copy of the foregoing was served via e-mail on the following:

Amina M. Mack
The Mack Law Firm, PLLC
4242 Six Forks Road, Ste. 1550
Raleigh, NC 27609
legal@themacklaw.com

*Attorneys for Claimant*

*/s/ Kellie A. Tabor*
Kellie A. Tabor, Bar No. 57153
ktabor@littler.com
Kelly Walker, Bar No. 49535
KeWalker@littler.com
LITTLER MENDELSON, P.C.
620 South Tryon Street, Suite 950
Charlotte, North Carolina 28202
Telephone: 704.972.7000
Facsimile: 704.333.4005

*Attorneys for Respondent*