**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**

**RALEIGH DIVISION**

No. 5:26-CV-00555

FILED

SEP 28 2026

PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY ______ DEP CLK

| | | |
|---|---|---|
| CRISELDA ANGELA BELL, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | REPLY IN SUPPORT OF PETITION |
| | ) | TO VACATE AND OPPOSITION TO |
| CISCO SYSTEMS, INC., | ) | CROSS-MOTION TO CONFIRM |
| | ) | |
| Respondent. | ) | |

Petitioner Criselda Angela Bell, proceeding pro se, respectfully submits this Reply in support of her Petition to Vacate and in opposition to Respondent's Cross-Motion to Confirm the Award.

Respondent begins with *Warfield v. ICON Advisers, Inc.*, emphasizing that vacating an arbitration award is a "herculean task" and that judicial review is "among the narrowest known at law." 26 F.4th 666, 669 (4th Cir. 2022). Petitioner does not dispute that standard. But Respondent stops short of the sentence in *Warfield* that defines the inquiry presented here. The Fourth Circuit continued: a reviewing court must determine "whether the arbitrators did the job they were told to do—not whether they did it well, or correctly, or reasonably, but simply whether they did it." *Id.* (quoting *Three S Delaware, Inc. v. DataQuick Information Systems, Inc.*, 492 F.3d 520, 527 (4th Cir. 2007)). That is precisely the question Petitioner asks this Court

to answer. The Supreme Court confirmed the same standard in *Stolt-Nielsen S.A. v. AnimalFeeds International Corp.*, 559 U.S. 662, 671 (2010): an arbitration award may be vacated under § 10(a)(4) when the arbitrator strays from the framework the agreement requires and substitutes her own analytical approach for the rule of law that should govern the submitted question. Petitioner contends the Supplemental Order demonstrates exactly that.

Petitioner acknowledges the exceptionally narrow scope of judicial review of arbitration awards. She does not ask the Court to decide whether the Arbitrator reached the best interpretation of federal employment law or to reweigh the merits of her discrimination claims. The Petition identifies narrower defects in the adjudicative process: (1) the Supplemental Order expressly stated and applied an equitable-estoppel standard directed to Respondent's conduct and then used the failure to satisfy that standard as the stated basis for rejecting Petitioner's separately submitted equitable-tolling argument; (2) the Award did not separately adjudicate the post-complaint retaliation theory pleaded from the July 25, 2025 internal complaint and subsequent September 2025 events; and (3) the pre-discovery dismissal foreclosed evidence in Respondent's possession material to those submitted issues. The question is therefore not whether the Arbitrator committed ordinary legal error, but whether she performed the distinct adjudicative tasks submitted to her and afforded a fundamentally fair opportunity to present material evidence.

Respondent's "second bite" characterization misses the distinction between the underlying issues submitted in arbitration and the statutory question now before this Court: whether the manner in which those issues were adjudicated falls within the narrow grounds for vacatur established by 9 U.S.C. § 10. The arguments Petitioner now raises under § 10(a)(3), § 10(a)(4), and manifest disregard were not available remedies before the Arbitrator. They are the precise grounds

Congress created for federal court review of arbitral proceedings. Petitioner is not seeking to relitigate the timeliness question. She is asking this Court to determine whether the manner in which that question was adjudicated satisfies the FAA's narrow grounds for vacatur.

Respondent's Footnote 2 asserts that the Petition "materially expands upon the factual allegations presented to the Arbitrator." The arbitration record directly contradicts this characterization. Petitioner's Corrected Statement of Claims — filed February 20, 2026 — expressly alleged: the high-risk pregnancy with OB-GYN-recommended disability leave beginning September 29, 2024 (¶¶ 24–26); repeated disability renewals with no guarantee of approval at each interval (¶ 27); the immigration sponsorship of Petitioner's mother with a Manila consular interview scheduled for February 2025 (¶¶ 35–37, 129); the July 25, 2025 internal complaint, September 8 investigation closure, and September 9 termination sequence (¶¶ 40–42, 157–162); and the comparative maternity-leave allegations (¶¶ 28–32). Petitioner's Witness List identified Seven Starling therapist Zoe Byrd for testimony regarding the mental health impacts of the layoff and the six-week disability renewal cycles; OB-GYN Dr. Rachel Fitchett for testimony regarding the high-risk pregnancy and the emotional toll of the termination; and witnesses Lucy Shepherd and Sara Starr for testimony regarding their prior knowledge of Petitioner's IVF treatments. Respondent cannot identify a single substantive fact bearing on the *Edmonson* equitable tolling inquiry that was not presented to the Arbitrator.

Respondent's Opposition correctly distinguishes ordinary accrual from equitable tolling. Petitioner therefore narrows Ground I and does not maintain that discovery of discriminatory motive delayed accrual itself. The Petition's underlying § 10 challenge remains the same: the Supplemental Order disposed of Petitioner's request for equitable tolling by applying the

deliberate-design standard associated with equitable estoppel rather than separately evaluating the equitable-tolling inquiry under its distinct requirements.

## I. THE SUPPLEMENTAL ORDER EXPRESSLY APPLIED AN EQUITABLE-ESTOPPEL STANDARD AND USED THAT RESULT TO DISPOSE OF THE SEPARATELY SUBMITTED EQUITABLE-TOLLING QUESTION.

For purposes of this ground, Petitioner accepts September 16, 2024 as the ordinary accrual date. *Hamilton v. 1st Source Bank*, 928 F.2d 86 (4th Cir. 1990) (en banc), and *Price v. Litton Business Systems, Inc.*, 694 F.2d 963 (4th Cir. 1982), address when the filing clock ordinarily begins after unequivocal notice of an employment decision. Petitioner's present argument concerns the analytically separate question whether, after that clock began, an equitable doctrine could suspend it.

Respondent emphasizes that the Petition acknowledged that the Arbitrator was aware of equitable tolling and addressed the tolling question. Petitioner does not rely on that acknowledgment. Whether the Arbitrator was aware of equitable tolling is not the § 10(a)(4) question. The question is whether she performed the adjudicative task the contract assigned: identifying and applying the rule of law governing the equitable tolling dispute. The Supplemental Order itself identifies one equitable doctrine, states that doctrine's employer-conduct standard, applies that standard to Respondent's conduct, and then uses the failure to satisfy it as the stated basis for disposing of Petitioner's separately submitted tolling question. Awareness of a submitted question is not the same as performing the contractually assigned adjudicative task. Petitioner's § 10(a)(4) argument in the Petition contended that the Arbitrator substituted equitable estoppel's framework for the equitable tolling framework the submitted

question required. This Reply does not replace that argument — it sharpens it. The Therefore chain in the Supplemental Order demonstrates that the doctrinal substitution was not an imperfect execution of the tolling task but the performance of an entirely different adjudicative task, such that the submitted tolling question was never performed under its correct framework. The Petition's underlying § 10(a)(4) challenge remains the same. The Supplemental Order's own language provides the proof.

The Supplemental Order states: "The statute of limitations will not be tolled on the basis of equitable estoppel unless [the delay was] a consequence of a deliberate design." It then concludes that "Claimant has not identified any actions by Respondent satisfying this standard" and follows with: "Therefore, Claimant has failed to identify any basis for her claim of equitable tolling." The Supplemental Order creates an unusual circumstance in which the Arbitrator expressly identified one equitable doctrine, applied that doctrine's elements, and made satisfaction of those elements the stated predicate for rejecting a separately submitted equitable doctrine. Petitioner does not ask the Court to infer what the Arbitrator privately considered. The written ruling affirmatively states an estoppel standard, evaluates Respondent's conduct under that standard, and uses that result as the expressed reason for disposing of the tolling argument. The Therefore chain is not a drafting infelicity in an incomplete explanation. It is a complete, self-contained logical sequence the Arbitrator chose to write — and when an arbitrator writes her own reasoning, that reasoning becomes the evidence of what she did. If arbitrators need not explain their decisions at all, then when one does explain, her explanation governs.

Respondent may argue that any gap between the Arbitrator's estoppel analysis and a tolling analysis reflects shorthand reasoning, implicit consideration, or a shortcut within the estoppel framework rather than performance of a different adjudicative task entirely. That argument

mischaracterizes what the Therefore chain establishes. Petitioner does not point to a gap in the Arbitrator's reasoning. Petitioner points to an affirmative substitution documented in three consecutive sentences: she stated an estoppel standard, applied it to employer conduct, and used the word "Therefore" to treat the estoppel outcome as a resolution of the tolling question. The catch-all closing language cannot cover that substitution because the Arbitrator did not fail to address the tolling argument — she addressed it through the estoppel chain. There is no gap for the catch-all to fill.

Respondent's opposition devotes considerable space to characterizing Petitioner's argument as challenging the Arbitrator's legal conclusions rather than the scope of her authority. What Respondent's brief does not do — in thirty pages — is engage with the three sentences in the Supplemental Order that prove the substitution. Respondent does not explain why the Arbitrator quoted an equitable estoppel standard to resolve an equitable tolling question. Respondent does not explain what "a deliberate design by the employer" has to do with whether a claimant diligently pursued her rights. Respondent does not explain what the word "Therefore" connects. The repeated characterization of Petitioner's argument as "challenging legal conclusions" is not an answer to the Therefore chain. It is a characterization of the chain that is designed to avoid engaging with it. The Court is respectfully directed to the three sentences themselves — which appear in the Supplemental Order and speak for themselves.

Respondent's own brief independently corroborates the substitution. Respondent describes the Arbitrator as having rejected equitable tolling on the ground that it "requires evidence of 'a deliberate design by the employer or of actions that the employer should unmistakably have understood would cause the employer to delay filing his charge.'" (Opposition at 5). That is the equitable estoppel standard from *Price v. Litton*. Respondent cannot simultaneously argue that

the Arbitrator correctly addressed tolling and describe her as applying the deliberate-design estoppel standard to do so.

Respondent's concession that the parties "fully briefed" the discovery-rule theory and that "the Arbitrator heard oral argument regarding the theory" (Opposition at 8) confirms that the issue itself was submitted and heard. Whether Petitioner supplied sufficient supporting authority is a separate question from whether the submitted theory received adjudication under the correct equitable framework.

Respondent's opposition does not address *Edmonson v. Eagle National Bank*, 922 F.3d 535 (4th Cir. 2019). *Edmonson* answers Respondent's present contention that the only relevant equitable standard is the deliberate-design framework. The Fourth Circuit in *Edmonson* confirmed that equitable tolling "differs from [fraudulent concealment and equitable estoppel] in that it does not assume a wrongful — or any — effort by the defendant to prevent the plaintiff from suing." 922 F.3d at 549. Although *Edmonson* was a RESPA case and Petitioner does not contend it governs the specific Title VII 180-day period, its articulation of the doctrinal distinction between equitable tolling and equitable estoppel reflects general federal equitable principles that courts apply across statutory contexts. For equitable tolling, the claimant must show diligent pursuit of rights and an extraordinary circumstance that stood in the way and prevented timely filing — neither element requiring deliberate misconduct by Respondent.

Respondent correctly notes that *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380 (3d Cir. 1994), received critical treatment in subsequent Third Circuit authority. Petitioner does not rely on *Oshiver* in this Reply. *Edmonson* supplies controlling Fourth Circuit authority for the

narrower proposition relevant here: equitable tolling, equitable estoppel, and fraudulent concealment are distinct doctrines with different elements. 922 F.3d at 548–50.

The distinction is important because every substantive test quoted in the Supplemental Order turned on Respondent's conduct. The question Petitioner submitted under equitable tolling instead required consideration of her diligence and whether circumstances external to her conduct prevented timely filing. Petitioner does not contend that pregnancy, medical leave, or disability leave suspends an EEOC deadline as a matter of law. She contends only that the two-part equitable-tolling inquiry was a distinct submitted question and that the written ruling does not apply that inquiry before concluding that tolling fails.

Respondent cannot salvage the award by pointing to the Arbitrator's reference to *Huff v. Board of Governors of University of North Carolina*, 334 F. App'x 583 (4th Cir. 2009). That reference was structural surplusage dependent upon the Therefore chain that preceded it — a reinforcing citation to a conclusion already reached through the estoppel analysis, not an independent adjudication of the equitable tolling question. The Arbitrator did not evaluate whether Petitioner's circumstances constituted extraordinary circumstances under an independent tolling framework. She evaluated whether Respondent engaged in deliberate design, concluded it had not, and cited *Huff* to reinforce that conclusion. The analogy is direct: if an arbitration agreement requires adjudication of a breach of contract claim, but the arbitrator instead applies the elements of a tort and rules against the claimant, the award cannot stand merely because the arbitrator appended a sentence stating the claimant would also lose the tort claim. *Huff* was that appended sentence. The equitable tolling question — whether Petitioner's diligence and extraordinary circumstances satisfied *Edmonson*'s framework — was the submitted question never adjudicated

on its own terms. A citation dependent on the substituted framework cannot rescue the adjudication the substituted framework displaced.

Respondent relies on *Three S Delaware, Inc. v. DataQuick Information Systems, Inc.*, 492 F.3d 520, 527 (4th Cir. 2007), for the proposition that judicial review asks whether arbitrators "did the job they were told to do." Petitioner accepts that demanding standard. The parties' Agreement required application of applicable substantive law, and the submitted issue was whether equitable tolling applied. Petitioner's position is not that the Arbitrator performed an *Edmonson* analysis badly; it is that the written Supplemental Order expressly performed the employer-conduct analysis associated with equitable estoppel and used that determination as the stated basis for disposing of the distinct tolling issue.

The contractual basis for this ground is specific. The parties' Mutual Agreement to Arbitrate expressly provides: "[F]or claims subject to arbitration, the Arbitrator will apply the substantive law of the State in which the employee works or worked, or federal law, or both, as applicable." (Arbitration Agreement at 1). Respondent quotes this provision on page 9 of its Opposition to establish that the Arbitrator acted within her authority. But the same provision defines precisely what authority she had: to apply the applicable substantive law to each submitted question. The parties further stipulated — as Respondent also acknowledges (Opposition at 9) — that "federal substantive law will govern any federal claim and issues." (Order on Motion to Dismiss at 5). The equitable tolling question is a federal claim. The applicable federal substantive law governing that question is not Price's deliberate-design estoppel standard — it is *Edmonson*'s diligence-and-extraordinary-circumstances framework. Respondent's own argument on page 9 therefore proves Petitioner's case: the Arbitrator was contractually required to apply federal substantive law to the equitable tolling question. The Supplemental Order applied equitable

estoppel's employer-conduct standard instead. The Arbitrator did not misinterpret the contract's applicable-law mandate — she did not perform it at all for the equitable tolling question submitted.

Respondent may argue that even if the Arbitrator's framework was imperfect, the record establishes that Petitioner could not have demonstrated diligence under any equitable tolling standard, rendering any defect harmless. That argument has no place in § 10(a)(4) review. The FAA does not recognize a harmless error doctrine for excess of powers claims. Either the Arbitrator performed the assigned task or she did not. If she did not, the correct remedy is remand for the assigned task to be performed under the correct framework — not judicial speculation about what the Arbitrator would have found. Petitioner's diligence and extraordinary-circumstances inquiry was never evaluated under *Edmonson*'s framework. The record contains documented extraordinary circumstances — a high-risk pregnancy, forty-six medical appointments, six-week disability renewals with no guaranteed approval, and an employer whose stated rationale changed materially after the window closed — that were never assessed under the correct standard. To affirm the award by predicting Petitioner would have lost under the correct framework is to perform the adjudicative task the FAA assigns to the arbitrator, not to this Court.

This is not a claim that the Arbitrator reached the wrong answer within the correct framework. It is a claim that the Arbitrator performed a different adjudicative task than the one the contract assigned. Under *Stolt-Nielsen S.A. v. AnimalFeeds International Corp.*, 559 U.S. 662, 671 (2010), that is an excess of powers. Under *Three S Delaware*, the question is whether she did the job she was told to do. The contract told her to apply federal substantive law — *Edmonson*'s

equitable tolling standard — to the equitable tolling question. The Supplemental Order shows she applied *Price*'s equitable estoppel standard instead. She did not do the job she was told to do.

The Supreme Court's decision in *Stolt-Nielsen S.A. v. AnimalFeeds International Corp.*, 559 U.S. 662 (2010), directly governs this ground. The Supreme Court held that an arbitration award may be vacated under § 10(a)(4) when the arbitrators' proper task was to identify the rule of law governing the submitted question, but instead they imposed their own framework. 559 U.S. at 671. The Court stated: 'It is only when an arbitrator strays from interpretation and application of the agreement and effectively dispenses his own brand of industrial justice that his decision may be unenforceable.' *Stolt-Nielsen*, 559 U.S. at 671. Petitioner's § 10(a)(4) argument is precisely parallel. The Arbitrator's proper task, under both *Stolt-Nielsen* and the parties' contract, was to identify and apply the rule of law governing the equitable tolling question — *Edmonson*'s diligence-and-extraordinary-circumstances framework. The Supplemental Order demonstrates she strayed from that task: she identified equitable estoppel's deliberate-design framework, applied it to Respondent's conduct, and used the Therefore chain to treat the estoppel outcome as a resolution of the tolling question she never adjudicated under its correct framework. That is dispensing her own brand of justice. Under *Stolt-Nielsen*, it is an excess of the arbitral authority the agreement conferred. Respondent may argue that *Stolt-Nielsen* requires complete abandonment of the contract subject matter, not merely application of the wrong framework within it. That reading misunderstands *Stolt-Nielsen*. The arbitrators in *Stolt-Nielsen* were evaluating the correct subject matter — whether class arbitration was permitted — but applied their own policy framework instead of identifying the rule of law governing that question. The Supreme Court vacated. Arbitrator Lehr evaluated the correct subject matter — equitable tolling

— but applied equitable estoppel's framework to that question instead of identifying the rule of law governing it. The parallel is exact.

Respondent also characterizes Petitioner as challenging the Arbitrator's "legal conclusions" rather than the "scope of her authority." (Opposition at 8). That framing misstates the § 10(a)(4) inquiry. The relevant question is not whether the Arbitrator reached a correct legal conclusion within her authority, but whether she performed the assigned adjudicative task. The task assigned was adjudication of equitable tolling. The Supplemental Order demonstrates she performed the equitable estoppel adjudication instead and connected the two through the word "Therefore."

Respondent states that Petitioner "argues that the Arbitrator exceeded her authority by declining to adopt her discovery-rule theory." (Opposition at 8). That is not Petitioner's argument. Petitioner does not contend the Arbitrator was required to adopt her tolling theory. Petitioner contends the Arbitrator was required to adjudicate it under the correct framework — *Edmonson*'s diligence-and-extraordinary-circumstances standard — before concluding it failed. An arbitrator who applies the correct framework and reaches an unfavorable conclusion has performed the assigned task — and that conclusion is beyond this Court's review. Substituting equitable estoppel for equitable tolling and using the Therefore chain to treat the estoppel outcome as a resolution of the tolling question is not reaching an unfavorable conclusion within the correct framework. It is performing a different adjudication than the one submitted. Respondent's brief never engages with that distinction.

Title VII's charge-filing requirement is nonjurisdictional and remains subject to equitable doctrines. See *Fort Bend County v. Davis*, 587 U.S. 541, 550–51 (2019); *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). Those authorities do not alter the

ordinary accrual rule. They establish only that fixing the date on which the clock begins does not itself answer a properly presented request for equitable relief from that clock.

The circumstances identified in the arbitration record — including Petitioner's medical and disability-leave circumstances, repeated leave renewals, and the sequence by which she contends the asserted discriminatory basis became apparent — were offered as evidence relevant to diligence and extraordinary circumstances. Whether those facts ultimately satisfy *Edmonson* is not the merits determination Petitioner asks this Court to make. The narrower point is that *Edmonson* identifies the inquiry that Petitioner contends the Supplemental Order did not separately perform.

Respondent may argue that Petitioner's accrual concession renders her medical circumstances irrelevant because the limitations window did not close until March 15, 2025 — six weeks after her February 6, 2025 delivery — and she could have filed during that post-delivery period. That argument does not address the actual *Edmonson* inquiry. The limitations window closed on March 15, 2025. During those six weeks, Petitioner was recovering from an induced delivery, managing a newborn, continuing her six-week Sedgwick disability renewals with no guaranteed approval at each interval, and operating under the same facially legitimate, internally corroborated employer explanation that gave her no basis to suspect discrimination. More fundamentally: the facts that would have revealed the discriminatory basis had not yet occurred as of March 15, 2025. The Dana Van Curen maternity leave disparity did not become apparent until May 2025, when Petitioner discovered it through LinkedIn. Petitioner's Renewal Plays program was not rebranded as Campaigns until after the window closed. The Cabantog attribution of Petitioner's role to Play for Points did not occur until November 2025. These are not facts Petitioner failed to investigate diligently during the post-delivery period. They are facts

that did not exist or were not accessible until after the window closed. A claimant cannot discover what has not yet occurred.

## II. RESPONDENT'S RELIANCE ON HAMILTON AND PRICE ADDRESSES ACCRUAL, NOT THE SEPARATE EQUITABLE-TOLLING QUESTION.

Respondent invokes *Hamilton* and *Price* to establish that the limitations period ordinarily commenced when Petitioner received notice of the employment decision. Petitioner accepts September 16, 2024 as the ordinary accrual date for this ground. The remaining question is whether the already-running period was subject to equitable tolling under the distinct standard recognized in *Edmonson*. Petitioner does not ask the Court to adopt a discovery-rule formulation that delays accrual itself. She asks the Court to distinguish ordinary accrual from the separate equitable doctrine that can, in rare circumstances, suspend a limitations period after it has begun.

The underlying accrual principle in both *Hamilton* and *Price* derives from *Delaware State College v. Ricks*, 449 U.S. 250, 262 (1980). But *Ricks* itself acknowledged that the limitations period should not commence so soon "that it becomes difficult for a layman to invoke the protection of the civil rights statutes." The Court found that concern inapplicable in *Ricks* because the plaintiff was "abundantly forewarned." Petitioner was the opposite: she received a facially legitimate, internally corroborated explanation, had no system access to investigate, and was managing extraordinary medical circumstances during the precise period the clock ran.

## III. THE AWARD DID NOT SEPARATELY ADJUDICATE THE POST-COMPLAINT RETALIATION THEORY PLEADED IN STATEMENT OF CLAIMS ¶¶ 157–162.

Petitioner does not contend that the mere implementation on September 9, 2025 of an irrevocable termination decision communicated on September 16, 2024 automatically created a new limitations period. *Ricks*, *Hamilton*, and *Price* foreclose that proposition. The submitted theory was different: whether any post-complaint conduct alleged in the Statement of Claims ¶¶ 157–162 constituted an independently actionable retaliatory act — distinct from the question of whether September 9, 2025 was the scheduled implementation of the 2024 layoff decision.

The Corrected Statement of Claims expressly pleaded at paragraph 162 that "[t]he temporal proximity between Respondent's denial of Claimant's complaint on September 8, 2025, and her termination on September 9, 2025, strongly suggests retaliatory motivation." Paragraph 159 alleged she "was terminated on September 9, 2025, one day after Respondent denied her internal discrimination complaint." Paragraph 160 alleged "[t]he adverse employment action was motivated by the protected activity." These are express allegations of conduct following protected activity that Petitioner contended constituted an independently actionable retaliatory act. That theory was submitted to the Arbitrator.

The Arbitrator concluded that causation was "impossible" because the September 2024 termination notice preceded the July 2025 protected activity by approximately ten months. That reasoning addresses whether the September 2024 notice could have been caused by protected activity that occurred in July 2025. It does not separately address Petitioner's pleaded contention that conduct occurring after the July 2025 complaint — specifically the September 8 denial and September 9 discharge — constituted retaliation for that protected activity. Respondent's own brief confirms this: it describes the Arbitrator's causation ruling only in terms of the 2024 notice and the 2025 complaint, (Opposition at 11), without addressing whether the post-complaint sequence gave rise to an independently actionable retaliatory act. Respondent further addresses

September 9 only in a footnote (n.8) as an alternative accrual date rather than as an independent theory. A footnote is not a separate adjudication.

Under *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) — which Respondent itself invokes as controlling — each discrete retaliatory act, if actionable, carries its own filing period. By citing *Morgan* approvingly while simultaneously describing the Arbitrator as addressing only whether the 2024 notice was caused by the 2025 complaint, Respondent's own brief confirms that the question *Morgan* speaks to — whether any post-complaint conduct constituted a discrete actionable act with its own filing clock — was never separately adjudicated.

By granting a pre-hearing dismissal without separately adjudicating whether the post-complaint sequence gave rise to an independently actionable retaliatory act, the Arbitrator left two submitted questions unperformed. First, under § 10(a)(4), she did not perform the distinct adjudicative task of evaluating whether the post-complaint sequence constituted an independently actionable retaliatory act — a theory that falls squarely within the submitted claims. Second, under § 10(a)(3), she denied Petitioner a fundamentally fair opportunity to present material evidence bearing on that submitted theory.

## IV. THE PRE-DISCOVERY DISMISSAL FORECLOSED ACCESS TO SPECIFIC EVIDENCE IN RESPONDENT'S POSSESSION MATERIAL TO THE SUBMITTED ISSUES.

Respondent correctly notes that the Arbitrator allowed Petitioner to submit four additional documents after briefing and oral argument. Petitioner does not dispute that those materials were

received and considered. Her § 10(a)(3) argument is not that the Arbitrator refused to accept documents already in Petitioner's possession.

The asserted deprivation is narrower. Petitioner contends that evidence material to the submitted tolling and post-complaint retaliation issues was in Respondent's possession and could not be obtained without discovery. That included internal communications concerning the Campaigns/Renewal Plays timeline, records concerning the attribution of Petitioner's role to "Play for Points," records relating to the Venngage materials, and records concerning the internal investigation and the September 2025 separation. The four documents Petitioner submitted after the hearing were documents in her own possession. The evidence foreclosed was evidence only Cisco has.

Respondent characterizes the Jennifer Lane email as "informing Ms. Bell that her September 18, 2025 inquiry was 'not a charge of discrimination.'" That is technically accurate but misleading in context. The Jennifer Lane email was the EEOC's standard intake process communication — a routine notification that accompanies every EEOC initial inquiry, explaining that an inquiry must be converted to a formal charge before the EEOC can act on it. It was not a determination that Petitioner's claim was untimely or invalid. Four days after that standard notification, Petitioner filed her formal EEOC Charge of Discrimination on September 22, 2025. The EEOC processed that charge and issued a Right to Sue on September 30, 2025 without any untimeliness finding. Respondent's presentation of the Jennifer Lane email as a substantive determination adverse to Petitioner's charge mischaracterizes a routine administrative intake notice.

A ruling on a motion to dismiss on timeliness grounds is not a ruling on the merits of the underlying discrimination claims. The six discrimination claims Petitioner submitted were

dismissed at a threshold motion before any discovery or merits hearing. That foreclosure is precisely what Petitioner identifies under § 10(a)(3).

Respondent quotes the Arbitrator's declaration that "[n]o amount of discovery will change the dates these discrete events occurred." That declaration had no reasonable basis as applied to the equitable tolling and post-complaint retaliation inquiries. Having treated those issues as legally incapable of being affected by evidence, the Arbitrator foreclosed evidence directed to materially different inquiries: whether extraordinary circumstances prevented timely filing under *Edmonson*, and whether post-complaint conduct constituted an independently actionable retaliatory act. The dates of discrete events are not what that evidence would have addressed.

Section 10(a)(3) does not guarantee the full discovery available in federal civil litigation, and Petitioner does not contend otherwise. Petitioner's argument is that a fundamentally fair opportunity to present a submitted theory cannot be reduced to permission to submit documents already possessed when material evidence necessary to develop that theory is exclusively in the opposing party's possession and the claim is dismissed before that evidence can be obtained. See *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 20–21 (2d Cir. 1997) (vacating award where panel closed record without adequate basis, finding no reasonable basis for conclusion that additional evidence would be cumulative on dispositive issue). While *Tempo Shain* is persuasive Second Circuit authority rather than Fourth Circuit precedent, its principle — that categorical foreclosure of material non-cumulative evidence on a dispositive issue deprives a party of a fair hearing — is consistent with *Three S Delaware's* recognition that § 10(a)(3) prohibits arbitral misconduct that prejudices a party's rights. 492 F.3d at 530. The factual distinction from *Three S Delaware* is significant: there the arbitrator afforded substantial opportunities to present evidence on the submitted issues. Here the Arbitrator categorically declared that the fact-intensive

equitable inquiries could not be affected by evidence, while the evidence bearing on those inquiries was exclusively in Respondent's possession.

Respondent may argue that the absence of a hearing transcript creates a presumption of regularity. Petitioner's § 10(a)(3) argument does not rest on disputed facts about oral argument. It rests on the Arbitrator's own written declarations in her June 5, 2026 Order and June 20, 2026 Supplemental Order. Those documents speak for themselves.

## V. MANIFEST DISREGARD IS ASSERTED ONLY AS AN ALTERNATIVE GROUND.

Respondent invokes *Warfield v. ICON Advisers, Inc.*, 26 F.4th 666 (4th Cir. 2022), *Friedler v. Stifel, Nicolaus & Co.*, 108 F.4th 241 (4th Cir. 2024), and *Constellium Rolled Products Ravenswood, LLC v. United Steel Workers International Union*, 18 F.4th 736 (4th Cir. 2021), for the proposition that misunderstanding, misapplication, or even serious legal error does not establish manifest disregard. Petitioner accepts that standard and presents manifest disregard only as an alternative ground.

Petitioner does not contend that ordinary legal error or misapplication of doctrine satisfies Warfield. If the Court concludes that the Arbitrator's application of the deliberate-design standard to a tolling argument reflects misunderstanding rather than conscious substitution, manifest disregard would not be established. Petitioner presents the alternative: if the Court determines from the Supplemental Order's own language — expressly identifying equitable tolling as the submitted doctrine and then applying equitable estoppel's employer-conduct standard through the Therefore chain — that the Arbitrator recognized the distinct doctrine and consciously applied a different one, the knowing defiance Warfield requires would be present. Petitioner presents this as a genuine alternative, not a confident characterization of the record.

The Second Circuit's decision in *Halligan v. Piper Jaffray, Inc.*, 148 F.3d 197 (2d Cir. 1998), while not controlling in this Circuit, recognized a principle directly relevant to this proceeding: "In view of the strong federal policy favoring enforcement of anti-discrimination laws, arbitral awards should be subject to sufficient scrutiny to ensure that these laws are not frustrated in the arbitral forum." *Id.* at 204. The Second Circuit further observed that "we are aware that arbitrators are not required to explain their conclusions," but that where a court reviews an arbitral award in an anti-discrimination case, the absence of analytical engagement with the submitted legal question is itself evidence bearing on the manifest disregard inquiry. *Id.* at 202. Petitioner does not ask this Court to apply *Halligan*'s standard in lieu of *Warfield*. Petitioner cites it for the narrower proposition that federal courts have specifically recognized the tension between FAA deference and the enforcement of federal anti-discrimination statutes — and that this tension counsels genuine engagement with whether the Arbitrator's written reasoning demonstrates the kind of analytical substitution that *Warfield* identifies as conscious disregard. The Therefore chain in the Supplemental Order is not an unexplained award. It is an explained award that explains the wrong adjudication. That distinction — documented substitution rather than silence — is what makes the manifest disregard argument here stronger than the typical case *Warfield* addresses.

## VI. RESPONDENT'S CROSS-MOTION TO CONFIRM SHOULD BE DENIED.

Respondent argues that Petitioner's alternative request for remand is moot because the Arbitrator issued the Supplemental Order. The Supplemental Order did not cure the § 10(a)(4) defect — it confirmed it. The Arbitrator's own words in the Supplemental Order — applying the deliberate-design estoppel standard and using the word "Therefore" to connect that application to the tolling conclusion — are the proof of the substitution, not its remedy.

Under 9 U.S.C. § 9, confirmation follows unless the award is vacated, modified, or corrected as prescribed by the FAA. Because the Arbitrator failed to adjudicate the submitted equitable tolling question under the correct framework, failed to separately adjudicate the post-complaint retaliation theory, and denied Petitioner a fair opportunity to obtain material evidence from Respondent's exclusive possession, the award cannot be confirmed. Respondent's cross-motion should be denied.

**CONCLUSION**

For the foregoing reasons, Petitioner respectfully requests that the Court grant the Petition to Vacate, deny Respondent's Cross-Motion to Confirm, and grant such other relief as the Court deems appropriate.

*Additional Exhibits: 1. EEOC Intake Correspondence reflecting May 1, 2025 as date of harm and October 28, 2025 as filing deadline. Exhibit 2: EEOC Notice of Right to Sue, Charge No. 433-2025-04606, dated September 30, 2025.*

Respectfully submitted,

Criselda Angela Bell
Petitioner, Pro Se
Case No. 5:26-CV-00555
1232 Harp St. Raleigh NC 27604
919-985-9228
criselda.monteza@gmail.com

Dated: September 28, 2026

## WORD COUNT CERTIFICATION

I, Criselda Angela Bell, proceeding pro se, certify that Petitioner's Reply in Support of Petition to Vacate and Opposition to Respondent's Cross-Motion to Confirm complies with the word limitation as prescribed by Local Rule 7.2(f)(3). This brief contains 5,734 words, exclusive of the caption, signature lines, certificate of service, exhibit notices, and this certificate, and does not exceed the 6,200-word limit applicable to reply briefs.

Criselda Angela Bell
Petitioner, Pro Se
Case No. 5:26-CV-00555
1232 Harp St. Raleigh NC 27604
919-985-9228
criselda.monteza@gmail.com

Dated: September 28, 2026